UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE APPLICATION OF ZOUZAR BOUKA; VISION INDIAN OCEAN S.A.; AND VIMA REAL ESTATE S.A.R.L. FOR AN ORDER DIRECTING DISCOVERY FROM SYMBION POWER SERVICES U.S., INC.; SYMBION POWER LLC; SYMBION POWER HOLDINGS LLC; SYMBION POWER AFRICA, LLC; SYMBION ENERGY HOLDINGS LTD.; AND PAUL HINKS PURSUANT TO 28 U.S.C. § 1782 | Case No. 22 Misc. _____ |

**DECLARATION OF ZOUZAR BOUKA IN SUPPORT OF *EX PARTE* APPLICATION FOR AN ORDER TO CONDUCT DISCOVERY FOR USE IN A FOREIGN PROCEEDING PURSUANT TO 28 U.S.C. § 1782**

1. I am the founder and Chairman of Vision Indian Ocean S.A. ("**VIO**") and ViMa Real Estate S.A.R.L.U. ("**VIMA**"), the corporate Applicants. I am a citizen of France.

2. Through VIO, VIMA, and my other companies, I have been actively involved in entrepreneurial business development in Madagascar for over twenty years. A particular focus of my business efforts has been to promote economic development in Madagascar, including in the field of energy.

3. VIO is a minority shareholder of Symbion Power Mandroseza S.A.R.L. ("**SPARL**"), a Malagasy company which operates a 40MW capacity power plant in Mandroseza, Madagascar. I am a *gérant* of SPARL. This is akin to being a director and officer of the company.

1

4.      VIO is also a minority shareholder of Symbion Mandroseza Mauritius Limited ("**SMML**"), a Mauritian holding company which holds—or until recently held—the majority of shares in SPARL.  The Symbion entities who are parties to the Shareholders' Agreement in SMML have refused to register VIO as a minority shareholder as such and VIO is currently seeking relief in arbitration concerning that refusal.

**Background**

5.      In early 2014, I met Mr. Paul Hinks at the United States-Africa Leaders Summit to discuss potential investments in power projects in Madagascar, where large portions of the country lack reliable electricity.

6.      At the time, Symbion appeared to be a reliable partner: it had won multiple U.S. government contracts to rehabilitate electrical infrastructure in Iraq and Afghanistan, was a major participant in the Obama Administration's Power Africa initiative. Thus, I entered into a joint venture agreement with Symbion Power to rehabilitate and operate the Mandroseza Power Plant.  A true and correct copy of the Joint Venture Amendment, together with subsequent amendments thereto, is attached hereto as **Exhibit 1**.

7.      Symbion Power, on behalf of SPARL, then in the process of incorporation, signed an agreement with the Malagasy state-owned utility firm Jirama for a twenty-year concession starting in July 2015; once the incorporation was complete, the agreement was novated to SPARL.  A true and correct copy of the Power Purchasing Agreement is attached hereto as **Exhibit 2**.

8.      Similarly, on behalf of and as a *gérant* of SPARL, I signed a Production Concession Agreement ("**PCA**") with Jirama and the Ministry of Energy and Hydrocarbons on

April 20, 2016. A true and correct copy of the Production Concession Agreement is attached hereto as **Exhibit 3**.

9. In 2016, Symbion indicated we would need to introduce a financing partner for Mandroseza. Symbion then approved Messrs. Eytan Stibbe and Alexander Oppenheim who ran a private equity fund and were involved in several other ventures with Symbion.

**The Shareholders' Agreement**

9. On November 8, 2016, Mr. Hinks (through Symbion Power and the later addition of Symbion Energy Holdings Ltd.), Alpha (later replaced by ESAH Mandroseza Ltd. ("**ESAH**")) and VIMA (later replaced by VIO) entered into a Shareholders' Agreement, which outlined the duties of each party in connection with the rehabilitation of the Plant. The goal of rehabilitation was to open another vital and lucrative stage for the Plant's operation. A true and correct copy of the Shareholders' Agreement, together with subsequent amendments thereto, is attached hereto as **Exhibit 4**.

10. The key financial terms of the Shareholders' Agreement are as follows:

   a. Symbion would be responsible for incorporating SMML in Mauritius as a holding company for the Plant;

   b. VIMA would hold 500 of SMML's 10,000 shares;

   c. In exchange for Alpha's investment of US$7 million, Alpha (later ESAH) would become the Plant's majority shareholder;

   d. Symbion would be chiefly responsible for operating the Plant, and it would receive a monthly management fee of up to US$20,000.

11. Symbion incorporated SMML on August 31, 2016, but kept all 10,000 shares to itself. A true and correct copy of SMML's certificate of incorporation is attached hereto as **Exhibit 5.** I have repeatedly requested that Symbion transfer the 500 contractually-promised shares to VIO, but Symbion Power has repeatedly ignored these requests. A true and correct copies of an example of an email I have sent to Symbion in writing to request the transfer of shares is attached hereto as **Exhibit 6**. To date, Symbion Power has not transferred any shares in SMML to either VIMA or VIO.

**Symbion's Theft from the Plant with the Complicity of Alpha and ESAH**

12. I recall from my discussions with Symbion and Alpha regarding the management of the Plant that from early in the project's history, Symbion had been dissatisfied with the management fee it had negotiated and from time to time requested large increases in its management fee, including in around 2017 requesting an increase from US$20,000 per month to US$100,000 per month. My recollection is that Symbion's stated justification for the increase was that it needed money for overhead, such as rent on its headquarters in New York, since it was not getting enough revenue from other parts of its business, including due to problems at its project in Tanzania. Alpha and I refused these requests.

13. In 2019, I learned that Symbion had stolen US$4 million from the Plant by labeling it a "loan" and transferring it to Symbion entities unrelated to the Plant. As I recall it, the theft came to light when a Symbion bookkeeper circulated a spreadsheet that revealed a very large debt from Symbion to the Plant and contained a sheet listing a large number of round-number transfers from the Plant to various Symbion entities. A true and correct copy of that spreadsheet is attached hereto as **Exhibit 7.**

14. Confronted with knowledge of its crime, Symbion admitted to me and Alpha that it had needed the money to pay for its headquarters functions in New York and said it would return the funds in substantial part by the end of 2019. A copy of the minutes of the annual general meeting of SMML on May 13, 2019 which reflect Symbion Power's promise to repay is attached hereto as **Exhibit 8**. To date, Symbion has never repaid one penny of its theft from the Plant.

15. The manner in which Symbion took out this "loan" inflicted severe financial harm upon the Plant. As of January 2020, the Plant had incurred nearly US$1 million in taxes, which were already overdue, because of how Symbion took the "loan" from the Plant. A true and correct copy of Symbion's request for payment authorization dated January 29, 2020, showing its outstanding taxes highlighted in green, is attached hereto as **Exhibit 9**.

16. In addition, an on-site examination of the financial records of the Plant showed that Symbion's financial misconduct was wider-ranging: Symbion has taken US$6 million in unexplained transfers or charges in the period between October 2016 and February 2019 via fifty-eight transfers of funds from SPARL to various Symbion entities.

**The PAC Proceedings**

17. On 2 April 2020, the Pôle Anti-Corruption ("**PAC**") in Madagascar began to investigate the criminal liability arising from Symbion's theft of the funds from the Plant. A true and correct copy of the complaint before the PAC is attached hereto as **Exhibit 10**. I am a complainant, as SPARL's *gérant*, in the PAC Proceedings. As such, I authorized SPARL's initial complaint to the PAC and have continued to supervise SPARL's lawyer in the proceedings.

5

**The Symbion-Alpha-ESAH Settlement**

18.     On 3 November 2021, Symbion, Alpha, and ESAH notified the arbitral tribunal in the pending arbitration and VIO that they have reached a settlement that was being finalized.

19.     On 9 December 2021, Symbion informed VIO that, as a result of the Settlement Agreement, Alpha/ESAH had transferred all of the 8,400 shares in SMML it held to Symbion Energy Holdings Ltd. (Cyprus). In so doing, Alpha/ESAH allowed the Symbion interest to accumulate the entirety of SMML's shareholding without regard to VIO's entitlement to a portion of such shares under Section 2.2 of the Shareholders' Agreement, and may have transferred all or part of those shares rightfully belonging to VIO.

20.     Alpha/ESAH transferred the 8,400 shares to Symbion Energy even though it knew that it was entitled only to 7,400 shares—and that VIO was entitled to 500 at least. By transferring 8,400 shares to Symbion Energy, Alpha/ESAH were in essence transferring VIO's 500 shares back to Symbion Energy.

21.     To date, VIO, VIMA, and I remain unaware of the precise terms of the Settlement Agreement, but very soon after it was announced, I began to hear rumors from industry sources that Symbion was trying to sell the Plant despite having no right to do so and that a potential buyer was Groupe Filatex. I thus believe that the Settlement Agreement's purposes included facilitating such a sale. I directed my counsel to send notices to the rumored buyers of my rights; a true and correct copy of the notice sent to Groupe Filatex is attached hereto as **Exhibit 11**.

**The Sale to Groupe Filatex**

22.     On 9 February 2022, a press article in Bloomberg News reported that Symbion

6

had sold the Mandroseza Power Plant to the Groupe Filatex. A true and correct copy of that article is attached hereto as **Exhibit 13**.

23. Symbion's purported sale was done in a covert arrangement without providing due notice or obtaining prior approval from VIO, as a shareholder of SPARL, or myself as a *gérant*.

24. The structure of the sale from Symbion to Groupe Filatex is unclear from that article. While public reports have not disclosed exactly how Groupe Filatex purports to own the Plant, my understanding is that Symbion purported to transfer shares in SMML and/or SPARL, ignoring VIO's right of first refusal under the Shareholders' Agreement, SMML's Constitution, and SPARL's Statutes.

25. I also understand that Symbion, Alpha, and potentially Groupe Filatex, have agreed to take steps to facilitate such a transaction in violation of VIO's rights under the Shareholders' Agreement and the companies' governing documents and in order to favor the interests of Symbion over the interests of SMML and SPARL as companies.

**Proceedings in France**

26. In addition to participating in the ongoing criminal proceedings against Mr. Hinks, I have engaged and instructed counsel in France, Dr. Alexandre Malan, to prepare to file litigation proceedings challenging Symbion's sale of interests in the Plant to Groupe Filatex. However, I need additional information about the purported sale to so that I can authorize Dr. Malan to proceed with the lawsuit, since I understand that French courts do not generally have a document production procedure and I do not have full information at this stage about the purported sale transaction.

27.     I have sent Groupe Filatex and other potential purchasers a notice of Applicants' rights on December 10, 2021. That notice quickly found itself in Symbion's hands.

28.     Neither I, nor VIMA or VIO, have agreed to arbitrate any dispute with Groupe Filatex ; it is not a party to the Shareholders' Agreement and, because its purported receipt of SMML shares was in violation of SMML's Constitution, it did not become a party to the more limited arbitration clause that applies to certain internal affairs claims there.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed in Paris on this 22 day of march, 2022.

_____

Zouzar Bouka