UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE APPLICATION OF ZOUZAR BOUKA; VISION INDIAN OCEAN S.A.; AND VIMA REAL ESTATE S.A.R.L. FOR AN ORDER DIRECTING DISCOVERY FROM PAUL HINKS; SYMBION POWER SERVICES U.S., INC.; SYMBION POWER LLC; SYMBION POWER HOLDINGS LLC; SYMBION POWER AFRICA, LLC; AND SYMBION ENERGY HOLDINGS LTD. PURSUANT TO 28 U.S.C. § 1782 | Case No. 21 Misc. _____ |

**DECLARATION OF FREDERIKA BANKS ANDRIANZANATANY IN SUPPORT OF *EX PARTE* APPLICATION FOR AN ORDER TO CONDUCT DISCOVERY FOR USE IN A FOREIGN PROCEEDING PURSUANT TO 28 U.S.C. § 1782**

1. I am an attorney licensed to practice law in the Republic of Madagascar. I am counsel to Zouzar Bouka and his companies Vision Indian Ocean S.A. and VIMA Real Estate S.A.R.L., as well as to Symbion Power Mandroseza S.A.R.L.

2. I graduated from the Université d'Antananarivo with a Master's degree in law in 2001. I have experience practicing before the courts of the Republic of Madagascar, including both criminal and commercial courts.

3. By way of background, the legal system of the Republic of Madagascar is predominantly based on French procedure. Madagascar substantive law is also heavily influenced by French law, as well as other provisions of Malagasy legislation.

1

### Background of the PAC Criminal Proceedings

4. On March 3, 2020, I was instructed to file a criminal complaint on behalf of Symbion Power Mandroseza S.A.R.L. ("**Company**"). I was instructed that the request was authorized by Mr. Bouka, as one of the Company's managers. The complaint was against, *inter alia*, Paul David Hinks whose principal company is Symbion Power LLC ("**Symbion Power**"). Under Malagasy law, a manager is akin to a director of a company, responsible for its management, and ultimately has a duty to promote the interests of the Company.

5. The complaint requested that a criminal investigation be conducted about the abuse of the Company's property, namely the theft of funds from the Company by Mr. Hinks and Symbion Power. Per the procedural requirements under Malagasy law, the complaint was filed with the Public Prosecutor of the Tribunal of First Instance at Antananarivo in Madagascar. A true and correct copy of the Complaint is attached hereto as **Exhibit 1.**

6. Under Malagasy criminal procedure, which is similar to many other French-derived systems, a private party (an individual or a Company) can request to be a civil party and to claim damages for any harm that is established through a criminal investigation. In this capacity, the Company has the right to introduce evidence and to be heard during proceedings.

7. The Malagasy criminal justice system is comprised of several chambers, which are under the ultimate supervision of the Superior Chamber, which adjudicates criminal proceedings. Depending on the characteristics of the alleged crime, a matter may be referred to a specialist chamber. Because the complaint in this case alleges corruption-related crimes, it was referred to Madagascar's specialist anti-corruption tribunal, the *Pôle Anticorruption* (or PAC).

8. The PAC is a stand-alone unit within the judicial system that includes both original/first instance and appellate courts. The PAC was created in 2016, following internal and international calls for independent anti-corruption courts that would be immune from undue influence from the executive. In 2016, the Malagasy Parliament adopted the law establishing the PAC, which includes specific modalities and requirements for the PAC's operations recommended by both the European Union Budget Support Program and the International Monetary Fund Extended Credit Facility.

9. The main objective of the PAC is to protect the integrity and independence of anti-corruption investigations and prosecutions. As such, the PAC has an independent budget and operates autonomously. The PAC Monitoring and Evaluation Committee (*Comité de Suivi-Evaluation des PAC*) is an independent committee that supervises the operations of the PAC to protect the tribunal from any unlawful interference into its activities and findings.

10. The PAC in Antananarivo has been operational since 2018. It is staffed with ten judges, eight public prosecutors, and twelve law clerks. Its appellate decisions are subject to appeal before the Supreme Court. The PAC handles some of the most complex cases in Madagascar, including cases against public officials, and has developed a reputation for independence.

11. With respect to the case concerning Symbion Power Mandroseza S.A.R.L., the criminal process against Mr. Hinks began before an investigation office (*cabinet d'instruction*) of the PAC. Its role was to determine whether there was sufficient evidence to refer the matter for trial before a criminal court (*tribunal correctionnel*) of the PAC. Mr. Hinks chose not to appear before the tribunal or to instruct counsel on his behalf.

12. The PAC appointed an independent auditor, Mr. Joseph Rakotoasimbola, to conduct an audit of the Company for the period running from November 2016 to February 2020. On 10 June 2021, Mr. Rakotoasimbola submitted his independent report to the PAC in which he found significant misuse by Symbion of the Company's funds.

13. On June 30, 2021, after almost a year of investigation by the PAC, the First Instance Judge Miora Manoela Ralison issued a judgment sustaining charges against Mr. Hinks, while finding insufficient evidence against certain other individuals who were identified in the complaint. A true and correct copy of the Judgment is attached hereto as **Exhibit 2**.

14. Judge Ralison found that there was sufficient proof to refer the matter to trial that, between November 2016 and February 2020, in his capacity as a manager of the Company, Paul Hinks acted in bad faith to the Company by diverting its funds to his personally affiliated companies through an extension of loans in the amount of US$5,750,000. The Judge therefore directed that the matter be remitted to the Correctional Tribunal of the PAC to be judged in accordance with the law.

15. Despite not having cooperated in the PAC proceedings prior to this stage, Mr. Hinks then retained counsel and filed an appeal to the Court of Appeals of the PAC. This is an appeal by right, which effectively requests a review of the PAC case file which was put before the First Instance Judge. The Court of Appeals affirmed the remanding of Mr. Hinks to the PAC Tribunal to be judged for abuse of corporate assets, and it also remanded Mirela Comaniciu to the PAC Tribunal to be judged for abuse of corporate assets pursuant to Order No. 59 dated August 16, 2021. The attorneys for Mr. Hinks and Ms. Comaniciu have appealed the Court of Appeal's decision, and their appeal is pending.

16. Assuming that Judge Ralison's order is affirmed by the Court of Cassation, the matter will then be remanded to the Criminal Court.

**New and Further Evidence Can be Introduced in the PAC Proceedings**

17. Upon remand to the Criminal Court of the PAC, there will then be a trial of the criminal charges against Mr. Hinks, as well as the civil claims for damages sustained by the Company and its members.

18. Because Mr. Bouka is a manager of the Company, he will be able to submit evidence during this trial on behalf of Symbion Power Mandroseza S.A.R.L.

19. The issues relevant to the trial will include the transfer of the Company's funds to Mr. Hinks' personal entities and the circumstances under which they were made, including Mr. Hinks' awareness that the loans were not authorized, the purpose of those loans, and his ability to repay those loans as none of the funds have been returned to the Company.

20. Because the PAC's investigation is now closed, it is not expected that the PAC will order Mr. Hinks to provide additional discovery materials. In any event, given that Mr. Hinks has not cooperated with the PAC investigation to date, there is a strong likelihood that Mr. Hinks will refuse any discovery requested of him. Furthermore, because Mr. Hinks has a web of corporate companies in the U.S. that are not formally part of the existing criminal investigation, there is a need to locate their evidence to bring all the necessary defendants into the civil proceedings. Malagasy courts do not oppose the introduction of evidence derived from international judicial assistance, but rather are required to consider all relevant and material evidence.

**Symbion's Purported Transfer of Shares in the Company to Groupe Filatex is Unlawful Under Malagasy Law**

21. A company formed under Malagasy law is subject to the provisions of the Malagasy Companies Law (Loi No. 2003-036 sur les Sociétés Commerciales) and the company's own constitutive documents, including its articles of association. A true and correct copy of the Company's articles of association is attached hereto as **Exhibit 3**. I note that Article 17 of the Company's articles of association provides that the managers are responsible to the Company, in conforming with Malagasy law, for breaches of any legal provision or regulation and for offenses that the managers commit in the course of their duties.

22. Both the Malagasy Companies Law and the Company's articles of association provide certain conditions on the transfer of shares in the Company to a third party. In particular, Article 338 of the Malagasy Companies Law provides that "the transfer of shares for consideration to third parties outside the company may only be done with the consent of the majority of partners representing half of the shares, after deduction of the shares of the selling partner." A true and correct copy of Article 338 of the Malagasy Companies Law, in its French original, is attached as **Exhibit 4.** This obligation is reflected in Article 11 of the Company's articles of association, which provides that a partner in the Company may not sell interests to a third party without obtaining prior approval of the majority of partners representing half the Company's shares after deduction of the shares of the selling partner, who may not participate in the vote. Symbion Power LLC and VIMA Real Estate SARL (VIO's predecessor in right in the Shareholders' Agreement) are the named partners in the Company's articles of association, and it is thus unlawful for Symbion to sell interests in the Company without VIMA's prior approval.

23. In addition, Article 11 of the Company's articles of association provides that, in order to obtain prior approval of any sale of interests from the non-selling partner, the selling partner must inform the managers by registered letter, informing the managers of the first and last names, professions, domicile, and nationality of the third-party buyer, as well as the number of shares to be sold. The managers would then call a board meeting within eight days to deliberate on the proposed sale. **Ex. 3**.

24. Under Article 11, the partners also "have a full right of preemption on the totality of shares to be sold." *Id.*

25. Furthermore, any change in ownership of the Company must be recorded with the Madagascar Companies Registry. As of the date of writing, the Madagascar Companies Registry does not reflect any change in ownership or directorship in the Company since the date of the purported sale. True and correct copies of the Company's record with the Madagascar Companies Registry dated February 15, 2022 and March 18, 2022 are attached hereto as **Exhibits 5** and **6**.

26. A transfer of shares in the Company that does not comply with the provisions of the Malagasy Companies Law and of the Company's articles of association, and which is not recorded with the Madagascar Companies Registry, is unlawful under Malagasy law.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed in Antananarivo on _March 22, 2022_.

_____
Frederika Banks Andrianzanatany

ANDRIANZANATANY Frederika Banks
Avocat au Barreau de Madagascar
Tél. 032 40 725 63 / 034 05 725 63
frederikabanks@yahoo.fr
frederikabanks@gmail.com



STATE of NEW YORK        )
                         )                ss:
COUNTY of NEW YORK       )

## *CERTIFICATE OF ACCURACY*

This is to certify that the attached document, "2022.03.22 Declaration of Frederika Banks [FR signed]-c2-c2-c2"-- originally written in *French* -- is, to the best of our knowledge and belief, a true, accurate, and complete translation into *English*.

Dated: 3/23/2022                                  Sworn to and signed before ME
                                                  This 23rd day of March, 2022

*Susannah Smith*                                  *James G Mamera*
———————————                                      ———————————
Susannah Smith                                    Notary Public
Project Manager
Consortra Translations

JAMES G MAMERA
Notary Public - State of New York
No. 01MA6157195
Qualified in New York County
My Commission Expires Dec. 4, 2022



---

New York, NY  |  Washington DC  |  Houston, TX  |  San Francisco, CA  |  Hong Kong

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE APPLICATION OF ZOUZAR BOUKA; VISION INDIAN OCEAN S.A.; AND VIMA REAL ESTATE S.A.R.L. FOR AN ORDER DIRECTING DISCOVERY FROM PAUL HINKS; SYMBION POWER SERVICES U.S., INC.; SYMBION POWER LLC; SYMBION POWER HOLDINGS LLC; SYMBION POWER AFRICA, LLC; AND SYMBION ENERGY HOLDINGS LTD. PURSUANT TO 28 U.S.C. § 1782 | Case No.21 Misc. _____ |

**DÉCLARATION DE FREDERIKA BANKS ANDRIANZANATANY À L'APPUI DE LA DEMANDE *EX PARTE* D'ORDONNANCE DE COMMUNICATION PRÉALABLE EN VUE DE SON UTILISATION DANS UNE PROCÉDURE ÉTRANGÈRE CONFORMÉMENT À L'ARTICLE 28 U.S.C. § 1782**

1. Je suis *avocat au barreau*, autorisée à exercer le droit à Madagascar. Je représente Zouzar Bouka et ses sociétés Vision Indian Ocean S.A. et VIMA Real Estate S.A.R.L., ainsi que Symbion Power Mandroseza S.A.R.L.

2. Je suis diplômée de l'Université d'Antananarivo, où j'ai obtenu une maîtrise *en droit* en 2001. J'exerce devant les tribunaux de la République de Madagascar, y compris les tribunaux pénaux et commerciaux.

3. À titre d'information, le système juridique de la République de Madagascar est basé principalement sur le droit français. Le droit malgache est fortement influencé par le droit français.

**Contexte de la procédure pénale devant le PAC**

4. Le 3 mars 2020, j'ai reçu des instructions de déposer une plainte pénale au nom de Symbion Power Mandroseza S.A.R.L. (la « **Société** »). J'ai été informée que la demande était autorisée par M. Bouka, en tant que l'un des *gérants* de la Société. La plainte visait, *entre autres*, Paul David Hinks dont la société principale est Symbion Power LLC (« **Symbion Power** »). Sous le droit malgache, un *gérant* s'apparente à un administrateur d'une société, responsable de sa gestion, et a le devoir de promouvoir les intérêts de la société.

5. La plainte demandait qu'une enquête criminelle soit menée sur l'abus de biens de la Société, à savoir le vol de fonds de la Société par M. Hinks et Symbion Power. Conformément aux exigences procédurales du droit malgache, la plainte a été déposée auprès du Procureur de la République du tribunal de première instance d'Antananarivo à Madagascar. Une copie conforme et correcte de la plainte est jointe à la présente (**pièce 1**).

6. Dans le cadre de la procédure pénale malgache, qui est similaire à de nombreux autres systèmes dérivés du droit français, un individu ou une entreprise peut demander à être une partie civile et à réclamer des dommages-intérêts pour tout préjudice établi par une enquête pénale. À ce titre, la Société a le droit de présenter des preuves et d'être entendue au cours de la procédure.

7. Le système de justice pénale malgache est composé de plusieurs chambres, qui sont placées sous la supervision ultime de la Chambre supérieure, qui statue sur les procédures pénales. Selon les caractéristiques du crime allégué, une affaire peut être renvoyée à une chambre spécialisée. Parce que la plainte dans cette affaire allègue des crimes liés à la corruption, elle a été renvoyée devant le tribunal anti-corruption spécialisé de Madagascar, le Pôle Anticorruption (ou PAC).

8.       Le CCP est une unité autonome au sein du système judiciaire qui comprend à la fois les cours d'origine/première instance et les cours d'appel. Le PAC a été créé en 2016, à la suite d'appels internes et internationaux en faveur de tribunaux anti-corruption indépendants qui seraient à l'abri de toute influence indue de l'exécutif. En 2016, le parlement malgache a adopté la loi établissant le PAC, qui comprend des modalités et des exigences spécifiques pour les opérations du PAC recommandées à la fois par le Programme d'appui budgétaire de l'Union européenne et par la Facilité de crédit étendue du Fonds monétaire international.

9.       L'objectif principal du CCP est de protéger l'intégrité et l'indépendance des enquêtes et des poursuites en matière de lutte contre la corruption. En tant que tel, le CCP dispose d'un budget indépendant et fonctionne de manière autonome. Le Comité de suivi-évaluation des CCP est un comité indépendant qui supervise les opérations du CCP afin de protéger le tribunal contre toute ingérence illégale dans ses activités et ses conclusions.

10.      Le PAC d'Antananarivo est opérationnel depuis 2018. Il est doté de dix juges, huit procureurs et douze auxiliaires juridiques. Ses décisions d'appel peuvent faire l'objet d'un appel devant la Cour suprême. Le CCP traite certaines des affaires les plus complexes à Madagascar, y compris des affaires contre des agents publics, et a développé une réputation d'indépendance.

11.      En ce qui concerne l'affaire Symbion Power Mandroseza S.A.R.L., la procédure pénale contre M. Hinks a commencé devant une chambre d'instruction du CCP. Son rôle était de déterminer s'il y avait suffisamment de preuves pour renvoyer l'affaire devant un tribunal correctionnel du CCP. M. Hinks a choisi de ne pas comparaître devant le tribunal ou de donner des instructions à un avocat en son nom. M. Hinks a choisi de faire déposer une note de Patrick

Omeke, Avocat Général, Symbion Power Group le 20 avril 2021, pour déposer ses moyens de dépense auprès de la juge d'instruction.

12. Le CCP a nommé un auditeur indépendant, M. Joseph Rakotoasimbola, pour effectuer un audit de la Société pour la période allant de novembre 2016 à février 2020. Le 10 juin 2021, M. Rakotoasimbola a soumis son rapport indépendant au PAC dans lequel il a constaté une utilisation abusive importante des fonds de la Société par Symbion.

13. Le 30 juin 2021, après près d'un an d'enquête menée par le CCP, la juge de première instance Miora Manoela Ralison a rendu un jugement soutenant les accusations portées contre M. Hinks, tout en concluant à l'insuffisance des preuves contre certaines autres personnes identifiées dans la plainte. Une copie conforme et correcte du jugement est jointe à la présente (**pièce 2**).

14. Le juge Ralison a conclu qu'il s'agissait d'une preuve suffisante pour renvoyer l'affaire au procès que, entre novembre 2016 et février 2020, en sa qualité de gérant de la Société, Paul Hinks a agi de mauvaise foi envers la Société en détournant ses fonds vers ses sociétés personnellement affiliées par le biais d'une prolongation de prêts d'un montant de US$ 5 750 000. Le juge a donc ordonné que l'affaire soit renvoyée au Tribunal correctionnel du CCP pour qu'elle soit jugée conformément à la loi.

15. Bien qu'il n'ait pas coopéré à la procédure de PAC avant cette étape, M. Hinks a alors retenu les services d'un avocat et a interjeté appel devant la Cour d'Appel du PAC. Il s'agit d'un appel de droit, qui demande effectivement un examen du dossier de PAC qui a été soumis au juge de première instance. La Cour d'Appel a confirmé le renvoi de M. Hinks devant le Tribunal du PAC pour être jugé pour abus de bien sociaux, mais elle a aussi renvoyé Mirela Comaniciu devant le Tribunal du PAC pour être jugée pour abus de bien sociaux suivant l'arrêt

nº 59 du 16 aout 2021. Les avocats de M. Hinks et Mme. Comaniciu ont fait cassation contre cet arrêt de la Cour d'Appel qui est toujours pendant.

16. En supposant que l'ordonnance du juge Ralison soit confirmée par la Cassation, l'affaire sera alors renvoyée au Tribunal correctionnel.

**De nouveaux éléments de preuve peuvent être présentés dans les procédures de PAC**

17. Après le renvoi au Tribunal correctionnel du PAC, il y aura ensuite un procès des accusations criminelles portées contre M. Hinks, ainsi que des demandes civiles de dommages-intérêts subies par la Société et ses membres.

18. Étant donné que M. Bouka est un gérant de la Société, il aura la possibilité de soumettre des preuves au cours de ce procès au nom de Symbion Power Mandroseza S.A.R.L.

19. Les questions relatives au procès comprendront le transfert des fonds de la Société à M. Les entités personnelles de M. Hinks et les circonstances dans lesquelles ils ont été consentis, y compris la connaissance de M. Hinks que les prêts n'étaient pas autorisés, l'objet de ces prêts et sa capacité à rembourser ces prêts puisqu'aucun des fonds n'a été retourné à la Société.

20. Étant donné que l'enquête du CCP est maintenant close, on ne s'attend pas à ce que le CCP ordonne à M. Hinks de fournir des documents de découverte supplémentaires. Quoi qu'il en soit, je constate que M. Hinks n'a pas coopéré à l'enquête du CCP à ce jour, il y a de fortes chances que M. Hinks refusera toute découverte faite de lui. De plus, parce que M. Hinks a un réseau de sociétés aux États-Unis qui ne font pas officiellement partie de l'enquête criminelle existante, il est nécessaire de localiser leurs preuves afin d'amener tous les défendeurs nécessaires dans la procédure civile. Les tribunaux malgaches ne s'opposent pas à l'introduction

de preuves provenant de l'entraide judiciaire internationale, mais sont plutôt tenus d'examiner tous les éléments de preuve pertinents et matériels.

**Le prétendu transfert d'actions de la Société au Groupe Filatex par Symbion est illégal sous le droit malgache**

21. Une société constituée en vertu de la loi malgache est soumise aux dispositions de la loi sur les sociétés malgaches (Loi n° 2003-036 sur les Sociétés Commerciales) et aux documents constitutifs de la société, y compris ses *statuts*. Une copie conforme et correcte des statuts de la Société est jointe à la présente (**pièce 3**). Je note que l'article 17 des statuts de la Société prévoit que les gérants sont responsables envers la Société, conformément à la loi malgache, des violations de toute disposition légale ou réglementation et des infractions que les gérants commettent dans l'exercice de leurs fonctions.

22. La loi sur les sociétés malgaches et le statut de la société prévoient certaines conditions sur le transfert des actions de la société à un tiers. En particulier, l'article 338 de la loi malgache sur les sociétés prévoit que « le transfert d'actions à titre onéreux à des tiers extérieurs à la société ne peut se faire qu'avec l'accord de la majorité des associés représentant la moitié des actions, après déduction des actions de l'associé vendeur ». Une copie exacte et conforme de l'article 338 de la loi malgache sur les sociétés, dans son original Français, est jointe à la présente (**pièce 4**). Cette obligation est reflétée dans l'article 11 des statuts de la Société, qui prévoit qu'un associé de la Société ne peut pas vendre des intérêts à un tiers sans obtenir l'approbation préalable de la majorité des associés représentant la moitié des actions de la Société après déduction des actions de l'associé vendeur, qui ne peut pas participer au vote. Symbion Power LLC et VIMA Real Estate SARL (prédécesseur de VIO en droit dans la convention d'actionnaires) sont les partenaires nommés dans les statuts de la Société, et il est

donc illégal pour Symbion de vendre des intérêts dans la Société sans l'approbation préalable de VIMA.

23. En outre, l'article 11 des statuts de la Société prévoit que, pour obtenir l'approbation préalable de toute vente d'intérêts de la part de l'associé non vendeur, l'associé vendeur doit informer les gérants par lettre recommandée, en informant les gérants des nom et prénom, professions, domicile et nationalité du tiers acheteur, ainsi que du nombre d'actions à vendre. Les *gérants* convoqueraient alors une réunion du conseil d'administration dans les huit jours pour délibérer sur la vente proposée. **(voir pièce 3)**

24. Aux termes de l'article 11, les associés « ont également un plein droit de préemption sur la totalité des actions à vendre ». *Idem.*

25. Par ailleurs, tout changement de propriétaire de la Société doit être enregistré au Registre du Commerce de Madagascar. À la date de rédaction du présent rapport, le Registre des Sociétés de Madagascar ne reflète aucun changement de propriétaire ou d'administrateur de la Société depuis la date de la vente présumée. Des copies exactes et conformes du dossier de la Société au Registre des sociétés de Madagascar daté du 15 février 2022 et du 18 mars 2022 sont jointes à la présente (**pièces 5** et **6**).

26. Un transfert d'actions de la Société qui n'est pas conforme aux dispositions de la Loi sur les sociétés malgaches et des statuts de la Société, et qui n'est pas enregistré au Registre des sociétés de Madagascar, est illégal en vertu de la loi malgache.

Je déclare, sous peine de parjure en vertu des lois des États-Unis d'Amérique, que ce qui précède est vrai et correct.

Signé à Tananarive le 22 mars 2022

Frederika Banks Andrianzanatany

7

ANDRIANZANATANY Frederika Banks
*Avocat au Barreau de Madagascar*
Tél. 032 40 725 63 / 034 05 725 63
frederikabanks@yahoo.fr
frederikabanks@gmail.com