UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE APPLICATION OF ZOUZAR BOUKA; VISION INDIAN OCEAN S.A.; AND VIMA REAL ESTATE S.A.R.L. FOR AN ORDER DIRECTING DISCOVERY FROM SYMBION POWER SERVICES U.S., INC.; SYMBION POWER LLC; SYMBION POWER HOLDINGS LLC; SYMBION POWER AFRICA, LLC; SYMBION ENERGY HOLDINGS LTD.; AND PAUL HINKS PURSUANT TO 28 U.S.C. § 1782 | Case No.21 Misc. _____ |

### DECLARATION OF ALEXANDRE MALAN IN SUPPORT OF *EX PARTE* APPLICATION FOR AN ORDER TO CONDUCT DISCOVERY FOR USE IN A FOREIGN PROCEEDING PURSUANT TO 28 U.S.C. § 1782

1. I am an attorney (*avocat au barreau*) admitted to the Paris Bar. I am counsel to Mr. Zouzar Bouka and his companies Vision Indian Ocean S.A. ("**VIO**"), VIMA Real Estate S.A.R.L. ("**VIMA**") in respect of legal matters in France. I am aware that Mr. Bouka is a French citizen.

2. I graduated from the Université Panthéon-Assas (Paris II) with a doctorate degree in law (*doctorat en droit*) in 2000. I also hold a Master's degree in Business Law (1995) and a Master's degree in International Law (1994) from the same university.

3. I am a partner and founding member of Belot Malan & Associés in Paris. My area of practice is litigation and arbitration. I also lecture in international business litigation and arbitration at the University Paris XII, and have authored many books and articles on international law. I am an author and contributor to Practical Law, where I publish commentaries on international contracts.

1



**Facts underlying the French Proceeding**

4. On 8 February 2022, Bloomberg Press published a news article entitled *"Filatex Buys Madagascar Power Plant, Invests in Storage Company."* A true and correct copy of the Bloomberg Press article is attached as **Exhibit 1**. The article reports in relevant part as follows:

> *Groupe Filatex, Madagascar's largest employer, has made two acquisitions to boost its electricity generation on the island nation and to develop power storage capacity.*
>
> *The company bought a 40 megawatt heavy fuel oil power plant in Madagascar's capital, Antananarivo, from New York-based Symbion Power for an undisclosed amount and paid 10 million euros ($11.4 million) for a 41% stake in France's Energiestro, which is developing flywheel storage technology, it said in statements sent to Bloomberg.*

Ex. 1.

5. The Bloomberg article appears to have been based on a press release issued by Groupe Filatex and Symbion Power on the preceding day, 7 February 2022, which stated:

> *Groupe Filatex, a leading African energy company based in Madagascar, announces today a major deal with Symbion Power; New York-based Independent Power Producer, operating in the Middle East, Asia and Africa. The agreement entails the acquisition of Symbion Power's 40MW heavy fuel oil (HFO) power plant in Antananarivo – to be hybridized by Groupe Filatex....*

A true and correct copy of the press release is attached as **Exhibit 2**.

6. The press release suggests that the acquisition concerned Filatex's purchase of "Symbion Power's" power plant. I understand that this is in fact incorrect. The power plant in question here is the Mandroseza Power Plant ("**Plant/Company**"). The Plant in fact has other shareholders, including my client VIO. My client Mr. Bouka is also a director ("*gérant*") of the Plant. Neither Filatex nor Symbion provided any notice to my clients or the company operating the Plant about the transaction with Filatex.



7. Based on public sources, I understand that Energiestro is a French technology company which specializes in flywheel energy storage technology. Flywheel technology allows a plant to store solar energy during non-sunshine hours and therefore hybridize into a solar plant. I understand that Filatex and Symbion intend to deploy Energiestro's flywheel technology at the Plant, allowing it to hybridize the plant, as indicated in the press release. I further understand that Filatex has acquired a minority stake in Energiestro in order to obtain use of its flywheel technology for use at the Plant. Further public material research revealed that that Groupe Filatex was advised in this deal by Okan Partners, a French strategic consulting and financial advisory service. Okan Partners' webpage also advertises its involvement in the deal. A true and correct copy of the press release by Okan Partners is attached as **Exhibit 3**.

8. The press releases reveal that Energiestro and Okan Partners facilitated the unlawful sale by Symbion of the Plant. The sale was unlawful because Symbion failed to comply with corporate statutory and contractual provisions for the transfer of shares, to the detriment of my clients. Symbion also did not give any notice to the directors of the Company, including my client, about the proposed sale to allow them to evaluate the proposed deal and consider whether it would be in the interests of the Company to proceed.

9. For an account of the illegality of the sale under contractual and the law applicable to the Plant—namely Malagasy corporate law—I refer to the declaration of Malagasy counsel instructed in this matter, Ms. Frederika Banks. Declaration of Frederika Banks ("Banks Declaration"), ¶¶ 21-26. I note that Ms. Banks states that the current Company share register still reflects the registration of my clients' interest as a director and a shareholder.

10. On 8 March 2022, I wrote to the directorship of Energiestro to place them on notice of my clients' ownership interests in the Company. I stated that Energiestro may not have



been aware of my clients' interests as indeed even the press release appeared to exclude this seminal information. I expressed concern that Energiestro had facilitated an unlawful infringement of my clients' and the Company's rights by dealing with an unauthorized counterparty and/or encumbering the Plant without having obtained necessary consents on behalf of the Plant's directors. A true and correct copy of my letter to Energiestro dated 8 March 2022 is attached as **Exhibit 4**.

11. On 9 March 2022, I received a response from Ms. Gennesseaux on behalf of Energiestro, which confirmed that the Bloomberg article correctly reported that Groupe Filatex had acquired a 41% stake in Energiestro. Ms. Gennesseaux's letter claimed that "the rest of the information [in the Bloomberg article] did not concern us." A true and correct copy of Energiestro's letter to me dated 9 March 2022 is attached as **Exhibit 5**.

12. On 15 March 2022, I wrote again to Energiestro noting its failure to explain its knowledge of and involvement in Groupe Filatex's simultaneous acquisition of the Plant and an interest in Energiestro. I pointed out that Energiestro specifically avoided confirming that Energiestro and Groupe Filatex have not signed any cooperation agreement for the acquisition of this Plant and/or for its exploitation A true and correct copy of my second letter to Energiestro dated 15 March 2022 is attached as **Exhibit 6**. I requested that Energiestro: (i) confirm that any such cooperation agreement did not relate to the Company; (ii) confirm that Groupe Filatex had not solicited Energiestro to furnish products or services to the Company; and (iii) provide information to explain why Energiestro did not conduct due diligence about Filatex's right to acquire shares in the Company, especially in such an important and publicized transaction. **Ex. 6**.

13. I have received no response from Energiestro to date.

4



## Grounds for Legal Proceedings in France

14. Mr. Bouka, VIO and VIMA have instructed me to pursue potential legal action in France against the Symbion Group of Companies (and/or their affiliate entities owned by Mr. Hinks), Groupe Filatex, Energiestro and/or Okan Partners relating to my clients' interests in the Plant.

15. Under French law, a court may recognize that a transaction is unlawful if it fails to comply with the necessary legal requirements under the applicable regime. It may also be the case if the applicable regime is based on a foreign applicable law, which in this case would be Malagasy law, as the *Lex societatis* (based on article L210-3, 2d phase of the Commercial Code; see also Loussouarn, Trochu, J.cl. Droit international, Conflits de lois en droit des sociétés, fasc. 570-40, §113 et seq.). =Here, the purported unauthorized sale of the Plant by Symbion to Groupe Filatex is unlawful according to Malagasy law because it failed to comply with contractual and statutory requirements regarding advance notice to the Company, publication in the commercial registry, and respect for my clients' preemption rights. In particular, I understand from the Banks Declaration that:

- Article 17 of the Company's *statuts* provides that the *gérants* are responsible to the Company, in conforming with Malagasy law, for breaches of any legal provision or regulation and for offenses that the *gérants* commit in the course of their duties. A true and correct copy of the Company's *statuts*, in its French original and an unofficial translation, is attached as **Exhibit 7**.

- Article 338 of the Malagasy Companies Law (Loi No. 2003-036 sur les Sociétés Commerciales) provides that "the transfer of shares for consideration to third parties outside the company may only be done with the consent of the majority of partners

5



representing half of the shares, after deduction of the shares of the selling partner." A true and correct copy of Article 338 of the Malagasy Companies Law, in its French original, is attached as **Exhibit 8**. This obligation is further encapsulated in Article 11 of the Company's *statuts*, which provides that a partner in the Company may not sell interests to a third party without obtaining prior approval of the majority of partners representing half the Company's shares after deduction of the shares of the selling partner, who may not participate in the vote. Because Symbion Power LLC and VIMA are the named partners in the Company's *statuts*, it was unlawful for Symbion to sell interests in the Company without VIMA's prior approval.

I also understand from article 290 of the Malagasy Companies Law (Loi No. 2003-036 sur les Sociétés Commerciales) that a sale of interests must be in writing. It can be opposed to third parties only after publication of the sale in the companies' registry. A true and correct copy of Article 290 of the Malagasy Companies Law, in its French original, is attached as **Exhibit 8**.

- Furthermore, Article 11 of the Company's *statuts* provides that, in order to obtain prior approval of any sale of interests from the non-selling partner, the selling partner must inform the *gérants* by registered letter of the first and last names, professions, domicile, and nationality of the third-party buyer, as well as the number of shares to be sold. The *gérants* would then call a board meeting within eight days to consider the proposed sale.

- Under Article 11, the partners also "have a full right of preemption on the totality of shares to be sold."

6



16. Besides this, my clients have or will suffer reputational and economic damages if the unlawful sale remains published in public sources in France, where my clients commonly conduct business. It is my client's economic and reputational interest not to allow publication of false information relating to their interests in the Company.

**The Applicants' Contemplated Proceedings Fall Within the Jurisdiction of French Courts.**

17. Under Article 42 of the French Code of Civil Procedure (*Code de Procédure Civile*), courts in France have territorial jurisdiction over matters where the domicile of any defendant is located. Where a matter involves more than one defendant, *"the plaintiff may, at his choosing, bring his case before the court of the place where one of them lives."* Article 42 of the French Code of Civil Procédure is applicable to international disputes (Cour de cassation, Civ.1 30 October 1962, *Scheffel,* n° 61-11306, Bull. n° 449; Cour de cassation, Civ.1, 3 December 1985, n° 84-11.209, Bull. 1985, I, n° 329). A true and correct copy of Article 42 of the French Code of Civil Procedure, in its French original, is attached as **Exhibit 11**.

18. I understand that Energiestro and Okan—prospective defendants in the French proceedings—are domiciled in France. According to Energiestro's corporate records, the company is incorporated at 6 rue des 13 Langues, 28200 Châteaudun, France, and its physical headquarters are located at 12 C rue du Port, 90850 Essert, France. Okan is domiciled at 1, place André Malraux, 75001 Paris, France. The Applicants therefore have standing to file a proceeding in French courts against Symbion, Groupe Filatex, Energiestro, and Okan Partners based on Article 42 of the French Code of Civil Procedure.

19. There is a public interest in the subject-matter of the proceedings for a French court, because it involves a publicized sale implicating at least on French corporation.



I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed in ____Paris____ on this _23_ day of March 2022.

_____

Alexandre Malan