Robert Mockler
+1 213 439-9429 direct
rmockler@steptoe.com



633 West Fifth Street
Suite 1900
Los Angeles, CA  90071-3500
213 439 9400 main
www.steptoe.com

April 1, 2022

<u>Via ECF</u>

Hon. Ronnie Abrams, U.S.D.J.
United States District Court, Southern District of New York
40 Foley Square, Room 2203
New York, New York  10007

**Re:** In re Application of Zouzar Bouka, et al., No. 22 Misc. 92 (RA)

Dear Judge Abrams:

Further to our letter dated March 29, 2022 (ECF Doc. 13), we write to correct the serious misrepresentations that Respondents Symbion Power Services U.S., Inc., Symbion Power LLC, Symbion Power Holdings LLC, Symbion Power Africa, LLC, and Paul Hinks ("Symbion") have made to this Court in their letter dated March 28, 2022 (ECF Doc. 11)—in particular, regarding the status of the criminal proceedings against Mr. Paul Hinks pending before the Anti-Corruption Court of Madagascar (the *Pôle Anti-Corruption*, or "PAC").

Far from Symbion's characterization of these criminal proceedings as a "sham," they are indeed very serious. As the Applicants explained in their initial filing, the First Instance Tribunal of the PAC has sustained charges against Mr. Hinks for abuse of corporate assets and misusing his corporate position to divert for his personal use approximately US$ 5,750,000 from Symbion Power Mandroseza S.A.R.L. ("SPARL").  Mr. Hinks appealed the judgment, but an independent Court of Appeals of the PAC affirmed the ruling. Mr. Hinks's second appeal, to the PAC Court of Cassation, remains pending. These PAC proceedings were commenced completely separately from the ICDR arbitration to which Symbion refers (which is addressed below).

Under the guise of addressing this Court of the "context" of the PAC proceedings, Symbion proceeds to make an unethical and misleading use of a document (the "Marovasa Letter," ECF Doc. 11-1) which it argues is proof that those proceedings had been renounced. But that simply is not true. Rather, the Marovasa Letter: (1) was created for leverage by Mr. Hinks in connection with an unrelated dispute; (2) has no legal effect, as it was held in escrow pending the satisfaction of certain confidentially negotiated settlement conditions which were not achieved; and (3) was acknowledged by Mr. Hinks's counsel as having been transmitted to it in error.

Hon. Ronnie Abrams, U.S.D.J.
April 1, 2022
Page 2

The context of the Marovasa Letter is as follows. Until recently, Mr. Bouka and Mr. Hinks were shareholders in a hospitality project in Madagascar known as "Marovasa." A dispute arose in 2019 which proceeded in the London Commercial Court. In October 2021, the parties agreed to settle the dispute recording their agreement in a settlement agreement (the "Settlement Agreement").

Although the Settlement Agreement is confidential, certain context about its consummation is necessary to address here. In the process of settlement discussions, Mr. Hinks sought to tie in the withdrawal of the PAC proceedings into the (unrelated) Marovasa matter. Mr. Bouka agreed to use reasonable endeavors to determine whether SPARL's other shareholders would agree to withdraw the complaint, and indeed asked them whether they would so agree. Mr. Hinks's counsel requested the preparation of the Marovasa Letter which was held in escrow and would *only* have legal effect if all the SPARL shareholders had agreed to withdraw the proceedings.

Ultimately, unanimous consent of all the shareholders to withdraw the PAC proceedings was not achieved. Mr. Hinks's counsel accepted that Mr. Bouka satisfied the reasonable endeavors clause and agreed to proceed to consummate the Settlement Agreement with the PAC proceedings still pending. The Marovasa Letter was never filed with the PAC. The Court can see for itself that the letter does not bear a file-stamp.

Counsel for Mr. Hinks in England, Omnia Strategy LLP ("Omnia"), received the draft Marovasa Letter in error. Mr. Bouka's English counsel, CGS Legal ("CGS") asked Mr. Bouka to sign a draft amid discussion of his outreach to other shareholders to determine whether they would agree to withdraw the PAC complaint. While attempting to show Mr. Bouka's efforts, CGS erroneously transmitted the Marovasa Letter to Omnia. Once CGS realized (presciently, in light of what has now happened) that Mr. Hinks might exploit possession of the escrowed letter, CGS notified Omnia of the error by telephone and both counsel memorialized the exchange immediately afterwards, with Omnia undertaking not to use the Marovasa Letter.

Exhibit A to this Letter is CGS's email to Omnia dated October 13, 2021, in which CGS requests written confirmation that Omnia accepts that "the letters to the Prosecutor signed by our client were sent in error and that they will not be used by Omnia." CGS stresses that "[a]ny use of this letter in any proceedings be it in New York or Madagascar or anywhere else would be in breach of clause 6.3 of the Settlement Agreement and I look forward to receiving confirmation from you that the letters will be returned."

Exhibit B is a response the same day from Omnia, acknowledging that "[w]e understand these have been distributed to us in error and, although we do not have any hard copies to return/delete and only received electronic versions, we confirm that Omnia will not use them except in accordance with the provisions of the Settlement Agreement." Omnia also undertook that that

Hon. Ronnie Abrams, U.S.D.J.
April 1, 2022
Page 3

"we will inform our clients of the error and we will advise them that they are also bound by the Settlement Agreement in respect of the Clause 6.3 letters."

Notwithstanding this undertaking, and Mr. Hinks's indisputable knowledge—as attested to by his own counsel—that he received the Marovasa Letter in error, he has chosen to mislead this Court into believing that the PAC proceedings have been abandoned. For reasons explained above, they have not been. Symbion's regrettable misrepresentation to the Court in its very first submission in this proceeding is, we submit, consistent with Symbion's misconduct regarding the misappropriations from SPARL and the secretive and illegal transaction with Groupe Filatex that form the basis for the foreign proceedings.

For completeness, we enclose as Exhibit C a supplemental declaration by Frederika Banks Andrianzanatany, SPARL's Malagasy counsel, confirming that the document attached to Symbion's letter was *not* filed and that the PAC proceedings are ongoing.

Symbion's letter similarly misstates the law regarding the permissible purposes for Section 1782 applications in the presence of additional proceedings. Symbion appears to contend that the existence of the arbitration proceedings —fully disclosed by Applicants—that themselves could not form the basis of a Section 1782 application under Second Circuit precedent presently under review at the Supreme Court precludes Section 1782 assistance. But the Second Circuit has itself unequivocally held, in a case in which Symbion's counsel represented the applicants, that the existence of additional proceedings does not preclude Section 1782 assistance where proceedings eligible for such assistance exist. *In re Accent Delight Int'l, Ltd.*, 869 F.3d 121, 133 (2d Cir. 2017).

To the extent that Symbion is contending that the foreign proceedings are or would be unsuccessful, the Second Circuit also rejected arguments that District Courts should consider the prospects of success of the foreign proceedings. *Id.* In any event the investigating magistrate in the Malagasy criminal proceedings here has determined that there is sufficient evidence to refer the matter for trial. (ECF Doc. 4-2.) As for the French proceeding, Mr. Bouka has been forthright in stating that he has retained eminent French counsel, that French counsel believes French courts would have jurisdiction over litigation regarding whether the Symbion-Groupe Filatex transaction violated applicable contractual and statutory requirements, and the purpose of this application with regard to the contemplated French proceeding is to attempt to obtain the documents necessary to determine the nature of the transaction that violated the Applicants' rights.[1]

---

[1] Symbion also references an arbitrator's decision regarding whether certain agreements were discoverable in arbitration. While preserving VIO's right to reply, we note that the question of whether a document is discoverable under arbitration rules is irrelevant to whether Section 1782 relief is available for a foreign proceeding, especially one against non-parties to the arbitration agreement.

Hon. Ronnie Abrams, U.S.D.J.
April 1, 2022
Page 4

In short, Symbion's inflammatory accusations in its letter are without merit and misleading both as to the facts and established Second Circuit law.

We are, of course, available to answer any questions that the Court may have regarding these matters.

                                                                Sincerely,

                                                                /s/ Robert Mockler


cc:      All Counsel of Record, via ECF