# Exhibit B

**INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION ("ICDR")**
**INTERNATIONAL ARBITRATION TRIBUNAL**


BETWEEN:


**SYMBION ENERGY HOLDINGS LTD. (CYPRUS)**
**SYMBION POWER HOLDINGS LLC**
**SYMBION POWER LLC**


AND:


**ALPHA INNOVATIONS MANAGEMENT, LTD. (BVI), ESAH MANDROSEZA LTD. (CYPRUS),**
**AND VISION INDIAN OCEAN (V.I.O.) SA (MADAGASCAR)**


**ICDR CASE NO.: 01-20-0000-4822**

---

# PROCEDURAL ORDER NO. 8 (PO#8)
# VIO'S REQUEST FOR INFORMATION REGARDING SETTLEMENT
## 23 NOVEMBER 2021

**I.     Introduction**

1. Claimants and Respondents Alpha/ESAH ("Alpha/ESAH") have jointly requested a suspension of the obligations owed to each other in the arbitration proceedings pending finalization of their agreement to settle their claims against one another, notified to the Arbitrator and Respondent VIO ("VIO") on 3 November 2021.

2. Claimants and Alpha/ESAH have confirmed that their agreement involves settlement of all claims as among them; that their settlement agreement once finalized will result in the dismissal, with prejudice, of all claims among them in the arbitration; that once that occurs, Alpha/ESAH will no longer be parties in any capacity in the arbitration; and that Claimants will continue with their claims against VIO (and remain respondents to VIO's counterclaims against them).

3. A partial settlement of claims during an arbitration, depending on its terms and the specific circumstances of the case, can impact the integrity and fairness of the remaining proceedings going forward. This potential depends, in part, on the extent to which the settlement agreement affects the underlying positions of the parties as reflected in the pleadings. At this point, that extent is unknown.

4. As the authorities referred to by the Parties reflect, the potential effect of a settlement agreement that does not resolve all claims in the remaining proceedings creates a tension between the usual confidentiality of the terms of a settlement and interests of fairness, which can justify the disclosure of otherwise confidential provisions of a settlement agreement at an appropriate stage.

5. In the circumstances of this case, the submissions since 3 November 2021, although not focused on the potential procedural issues, already suggest that there are several procedural issues that will need to be addressed in order to ensure the integrity of the proceedings going forward. These issues will be dealt with in due course and after receipt and consideration of submissions, commencing with VIO's comments on the Suspension Request.

6. Accordingly, this procedural order addresses only the request at this stage of the proceedings by VIO for further information about "the planned structure after the intended implementation of the deal at the end of November" that it submits is necessary to make its comments.

**II.    Procedural Background**

7. On 3 November 2021, Claimants' counsel wrote to the Arbitrator to advise the following:

> *We write on behalf of the Alpha/ESAH and the Symbion parties. The Alpha/ESAH and Symbion parties have reached an agreement that resolves all of their mutual claims against one another in this arbitration. The Alpha/ESAH parties and the Symbion parties therefore request that you pause any and all obligations that the Alpha/ESAH parties and Symbion parties owe one another in respect of this arbitration, including the depositions of Messrs. Stibbe and Hinks. By the end of November, the Alpha/ESAH and Symbion parties anticipate dismissing all claims against one another with prejudice, and will write to inform you when they do.*
>
> *Counsel for the Alpha/ESAH parties will write separately to confirm their agreement to this request.*
>
> *The Symbion parties also hereby state their intent that, if and when all claims between and amongst the Symbion parties and Alpha/ESAH are settled, Symbion will exercise its right to a deposition to call Mr. Bouka, the principal of the remaining Respondent, to be deposed in Mr. Stibbe's stead.*

(the "Suspension Request")

8. Also on 3 November 2021, counsel for Alpha/ESAH wrote to confirm their agreement with the Suspension Request.

9. Successful settlement between Claimants and Alpha/ESAH would not resolve all the issues in the arbitration. Claimants' claims against VIO and VIO's counterclaims against Claimants would remain to be decided. The Suspension Request did not address the substance of the remaining claims or impact on the procedural timetable, although it suggested that Claimants were of the view that disclosure was ongoing and not yet complete.

10. On 4 November 2021, the Arbitrator acknowledged receipt of this correspondence and advised that in light of the Parties' agreement, the deadlines in respect of procedural obligations owed between Alpha/ESAH and the Symbion parties were suspended pending confirmation by no later than 30 November 2021 that the claims as between those parties have been dismissed.

11. The Arbitrator also noted her understanding from the Symbion parties' message that the depositions provided for in Procedural Order No. 6 had yet to take place and requested an update as to the status of document production. According to Procedural Order No. 6, there should not have been any procedural obligations owed between the settling parties after 1 November 2021, which was the target date for completion of depositions; the next deadline provided for in the procedural timetable is the filing of counter memorials on 20 December 2021.

12. During the CMC on 10 September 2021, the Parties agreed that depositions would be completed by no later than 1 November 2021, which was memorialized in Procedural Order No. 6 issued on 27 September 2021. In subsequent correspondence related to the Suspension Request, the Arbitrator confirmed that she had received no correspondence advising of any agreement to extend the deadline for the completion of depositions nor any request for confirmation of the extension of those deadlines.

ICDR Case No. 01-20-0000-4822
Procedural Order No. 8
Page 3

13. The Arbitrator's 4 November 2021 correspondence invited VIO to provide any comments in respect of the other Parties' communications. A deadline of 12 November 2021 was set to encourage counsel as to the remaining claims to consult and, if possible, advise a joint proposal for how to manage those claims in an efficient and fair manner in light of the likely settlement of the other claims.

14. On 5 November 2021, VIO wrote to provide its preliminary position and reserved its right to make a full response. In addition to formally objecting to Claimants' reservation of rights with respect to depositions, VIO requested an order that Claimants and Alpha/ESAH advise immediately the planned structure of the joint venture post settlement and how the parties would continue to act in the arbitration.

15. On 10 November 2021, the Arbitrator acknowledged receipt of VIO's communication of 5 November 2021 and repeated the hope that counsel would discuss how to efficiently move the remaining claims forward in advance of the 12 November deadline for VIO's submission.

16. In response to this acknowledgement, that same date, Claimants wrote to the Arbitrator. Relevant to this application, Claimants stated "any attempt by Claimants to engage VIO in discussions regarding the arbitration would be premature and unproductive until Claimants have had the opportunity to review VIO's "full response" later this week."

17. Also on 10 November 2021, VIO wrote in response to Claimants' email. That email, in relevant part, stated:

*Symbion's response represents a tactical, and by now customary, effort to create a smokescreen for its conduct. This is particularly so given the very serious issue which we outlined to your attention in our letter dated 5 November. We explained that Symbion and the First Respondent appear to have reached a deal to the total exclusion of VIO and its rights. A cryptic request contained in the 3 November "joint settlement notification" that you authorize the suspension of these proceedings until the end of November, coupled with a text-message sent to our client that "the partnership is ending" raise serious concerns that the deal between the relevant parties was aimed at avoiding their respective liabilities, and thereby to undermine VIO's ability to maintain its claims against a credit-worthy counterparty in these arbitration proceedings.*

*To that end, our 5 November letter specifically requested Madame Arbitrator to protect the integrity of this arbitration. We requested you to direct Symbion and the First Respondent to correct the information imbalance so as to enable VIO to provide its full response on the status of the arbitration which you requested by 12 November. Concretely, VIO seeks (1) information about the planned structure after the intended implementation of the deal at the end of November; and (2) confirmation of which capacity Symbion and First Respondent would continue to act in these proceedings. Until this information is known, respectfully, there can be no meaningful response from VIO regarding the proposed procedure forward. In particular, if there is any share transfer, or there is an ultimate dissolution of the partnership, that will require VIO to modify its claims, including because its first articulation of the case was based on the testimony of a party which is apparently withdrawing from the arbitration.*

*…*

*By this email, VIO requests that this information is provided by return, in its absence, VIO reiterates its request to Madame Arbitrator as set out in the 5 November letter and emphasizes the urgency of its request.*

18. On 12 November 2021, VIO wrote referencing its requests of 5 and 10 November and referencing Rule 37 of the AAA Arbitration Rules, VIO sought the Arbitrator's intervention to protect the integrity of the proceedings and VIO's rights, as follows:

    *By the present letter, we urge Madame Arbitrator to take action to ensure the procedural and substantive integrity of these proceedings. To date, VIO remains in the dark regarding Claimants' and First Respondents' cryptic maneuvers to "end[] the partnership" pursuant to which the jurisdiction of this tribunal has been formed, and pursuant to which Claimants and First Respondents are subject to incur liability for the damages sustained by the Mandroseza Power Plant, of which VIO is a shareholder. Claimants and First Respondents have refused to answer VIO's repeated inquiries as to the implications of their secret arrangement on the arbitration proceedings. In particular, VIO's request for information from First Respondents, communicated as early as November 3, has remained unanswered.*

19. On 12 November 2021, the Arbitrator wrote to the Parties reviewing the status of the correspondence and procedure to date and, relevant to this application, stated as follows:

    *The next step in the current Procedural Timetable is the exchange of counter memorials on 20 December 2021. Not all claims have been settled. At a minimum, the claims as between the Symbion parties and Respondent VIO remain to be determined. In order to ensure that the remaining claims in the arbitration proceed in an orderly fashion, I agree that further information is required. Claimants and Respondents ESAH/Alpha are ordered to provide VIO's counsel with:*

    a. *Information about the planned structure after the intended implementation of the deal at the end of November; and*

    b. *Confirmation of which capacity Symbion and First Respondent would continue to act in these proceedings.*

    (the "Order")

20. Following this message, each of Claimants and Alpha/ESAH have provided confirmation of which capacity that each would continue to act in these proceedings and that aspect of the order is not in issue. Any evidentiary issues flowing from the withdrawal of the claims as between Claimants and Alpha/ESAH remain to be addressed following further submissions. Both Claimants and VIO have signaled that changes to the pleadings may be necessary.

21. On 13 and 14 November, respectively, each of Claimants and ESAH/Alpha also objected to providing "information about the planned structure after the implementation of the deal at the end of November" on the basis of confidentiality. Claimants' submission also objected to the Arbitrator's order on the basis that they had not been provided a full opportunity to be heard before being ordered to provide this information.

22. On 15 November 2021, VIO made a further submission noting the other Parties' refusal to comply with the order and requested sanctions designed to protect it against any delay

in compliance. In addition, it referred to the Arbitrator's ability to order production of information pursuant to Article 22 of the AAA Commercial Rules, as well as Article 37, and provided authorities at New York law relating to confidentiality of settlement agreements as between settling parties and non-settling parties in litigation proceedings.

23. On 16 November 2021, in response to the correspondence of 13, 14 and 15 November 2021, the Arbitrator wrote to summarize the status of the application stating, in relevant part, as follows:

*I have before me the joint request by Claimants and Respondents Alpha/ESAH to suspend the proceedings as between them (the "Suspension Request"). That request was made without providing any indication of the impact on the remaining claims in the arbitration in the event that the settlement is finalized other than the Claimants' reservation of purported rights to depositions. I note that the issue of any remaining rights to depositions is disputed. This issue is not before me for decision at this stage and may need to be briefed and resolved in the future.*

*The Suspension Request is made by only three of the four parties to the proceeding. Accordingly, what is to be determined is whether the Suspension Request affects the integrity of the remaining arbitration proceedings. Claimants, as the party making the Suspension Request but also continuing its claims in the remaining proceedings (and respondent to VIO's counterclaims), must satisfy me that the integrity of the proceedings are not called into question by their request.*

*Respondent VIO who is a party to the arbitration but not a party to the pending settlement agreement was invited to comment on the Suspension Request. Respondent VIO advised that it required further information in order to provide its position on the Suspension Request and requested this information directly from Claimants and then requested, on three subsequent occasions, that the Arbitrator order the information to be provided. Claimants' only response during this period (following the first of these requests to the Arbitrator) did not directly address the requested information. On 12 November, I ordered that this information be provided to VIO so that it could be in a position to provide its comments on the Suspension Request.*

*I understand from Claimants' message of 13 November that they have further submissions to make with respect to Respondent VIO's request for further information regarding the settlement and status of the parties going forward. Accordingly, the order of Friday, 12 November is suspended pending the receipt, review and consideration of further submissions with respect to that request. Claimants (and Respondents Alpha/ESAH, if they so wish) are invited to make any further submissions on this issue that they wish to make at their earliest convenience and, in light of the urgency of VIO's request, no later than Wednesday, 17 November. Respondent VIO will then have an opportunity to make any reply submissions it considers necessary by Thursday, 18 November. Once these further submissions have been received, I will issue my decision on VIO's request for further information.*

24. On 17 November 2021, Claimants made further submissions, *inter alia*, addressing VIO's position as to the ability to compel the production of information related to the settlement in arbitration versus litigation and the authorities relied upon. Claimants also requested the opportunity to further respond to any new arguments raised by VIO in response to its submission.

25. On 18 November 2021, VIO provided its answer to Claimants' submission of 17 November.

26. On 19 November 2021, the Arbitrator acknowledged receipt of the 17 and 18 November 2021 submissions and invited Claimants to make any reply submissions by 22 November and afforded VIO the ability to respond to those submissions.

27. On 22 November 2021, Claimants made further submissions addressing what they identified as the "new facts or clarifications" contained in VIO's 18 November 2021 submission and maintained that none of VIO's new material justifies mandating further disclosure from Claimants or Alpha/ESAH for decision of the Suspension Request.

28. Also on 22 November 2021, VIO provided short further comments and indicated that it was content to rely on the previous submissions.

III.   **Positions of the Parties**

   a.  **VIO**

29. Relying on Rules 22 and 37 of the AAA Commercial Rules, VIO submits that the Order was properly made after a stalemate had been reached between it and Claimants regarding information it said was necessary to safeguard each party's opportunity to fairly present its claims and defenses.

30. VIO says that the Parties were afforded due process and that Claimants' refusal to comply with the Order "is little more than a delaying tactic intended to postpone compliance with until after any prejudice to [VIO] has crystallized (i.e., beyond the end of November)."

31. With respect to the substance of the Order, VIO says that confidentiality is not a basis for refusing to produce the information. It confirms that it is not (at this stage) seeking information about the negotiations that led to the settlement agreement. It states:

*"VIO and Madame Arbitrator need to understand the terms on which the Claimants and First and Second Respondent have agreed to settle their claims because that settlement will necessarily impact on the parties' rights under the Shareholders' Agreement (which is the subject of this arbitration) and the future conduct of the arbitration as between the Claimants and VIO. In particular, to the extent that the Claimants and the First and Second Respondents have agreed to vary the relationship, or ownership structure, such that they no longer operate in accordance with the terms of the Shareholders' Agreement, that*

*necessarily has a direct impact on our client including his rights in this arbitration and the continuing operation of the Mandroseza Power Plant."*

32. It refers to cases of New York procedural law, which it says governs the arbitration, and provides that "disclosure of the terms of a settlement agreement by a settling party to a non-settling party is appropriate, even in the presence of a confidentiality clause in the agreement where the terms of the agreement are material and necessary to the non-settling party's case."[1] It submits that "material and necessary" should be interpreted "liberally to require disclosure, upon request, of any facts bearing on the controversy which will assist preparation for trial by sharpening the issues and reducing delay and prolixity."[2] VIO volunteered safeguards to ensure that the terms of the deal are not made public or to provide for an *in camera* inspection to resolve any issues as to relevance of the terms to the advancement of VIO's claims and/or defenses in this arbitration.

33. VIO noted that Claimants' and Alpha/ESAH's refusal to comply with the Order was "the second time in as many weeks" that they had "openly defied" the Arbitrator in these proceedings. It noted that sanctions were available for such behaviour and requested that one designed to ensure that VIO not suffer prejudice be imposed for refusal to comply with the Order.

34. VIO also said that Claimants' principal, "Mr. Paul Hinks has been indicted in Madagascar for criminal activity as a result of Claimants' misappropriation of the Mandroseza Power Plant funds, which forms part of VIO's claims against Claimants in the present proceedings. Now Claimants seek to broker a deal with First Respondents, possibly to defraud the Mandroseza Power Plant – in which VIO is a shareholder – of its ability to recuperate the misappropriated funds." It submits that "[i]t is in the interests of all parties that there be transparency in the brokered deal and its effects on the procedural integrity of these proceedings – including VIO's ability to advance its claims – prior to any effects of the deal materializing."

35. VIO submits that Claimants' demand that it identify the terms of the settlement agreement and explain how they affect VIO's rights when Claimants refuse to produce the terms of the agreement is "patently absurd".

36. VIO maintains that it has cited and relies upon the appropriate New York law authorities and that Claimants have cited to inapposite case law in an effort to mislead.

37. VIO submits that the settlement agreement will render it impossible to advance its counter memorial in the arbitration, as Claimants have not particularized their claims as against the individual respondents. Further, it says that it "does not know the extent to

---

[1] Citing *Golio v. Greenstein*, RLA-42 and *Masterwear Corp. v. Bernard*, RLA-43.
[2] Citing *Mahoney v. Turner Const. Co.*, RLA-44.

which some or all of those pleaded claims have been compromised by the Claimants and/or the First and Second Respondents or the impact that any such compromise has or might have on the Claimants' case."

38. It provides an example:

*By way of example, all parties to this arbitration agree that VIO is entitled to, but has not received, at least 500 shares in Symbion Mandroseza Mauritius Limited ("SMML") representing VIO's 5% interest in the Plant. As a result, the dispute between the parties is limited to whether it is the Claimants or the First and Second Respondents who are required to transfer those 500 shares to VIO. It is the Claimants' case that it is for the First and Second Respondents to transfer the shares to VIO. However, if the purported settlement involves the First and Second Respondent transferring 100% of the shares that they hold in SMML to the Claimants, then VIO is entitled to know that fact. If those shares are not being transferred to the Claimants, then the First and Second Respondents must remain parties to this arbitration so that they are bound by the terms of any Final Award.*

39. VIO maintains that the requested disclosure is necessary for it to understand the impact on VIO's claims in the arbitration and the prejudice to VIO. It sets out three possible scenarios where it says its rights would be prejudiced: if the settlement agreement results in only one shareholder of SMML; if there are evidentiary arrangements included in the settlement agreement that impact the evidence available to VIO to prove its claims; and/or if the settlement agreement makes it possible to move assets and/or dissolve SMML and/or SPARL.

40. Respondent VIO states that its concerns are real and genuine and that its request is intended to preserve its rights in the arbitration.

### b. Claimants

41. Claimants submit that VIO's questions are ambiguous, as VIO does not explain how any alleged share transfer not involving VIO would require it to modify its claims, and they claim that they do not understand VIO's references to "ultimate dissolution of the partnership".

42. Claimants say that VIO has not established its right to disclosure of any part of the confidential settlement agreement and argues that it has mischaracterized New York law on this issue. Claimants note that the authorities cited by VIO do not relate to disclosure in arbitration and that the standard is "much more onerous" in arbitration proceedings.

43. Claimants submit that New York courts will only order disclosure for parties in arbitration under extraordinary circumstances.[3] Claimants argue that the standard is an onerous one that VIO cannot meet; disclosure must be "absolutely necessary for the protection of the rights of a party."[4]

44. Further, in the alternative, Claimants say that VIO has not established that the content of the settlement agreement is "material and necessary" to its claims or defenses. VIO "must demonstrate how the settlement agreement is likely to bear on specific 'issues of fault and damages' in VIO's claims."[5] Claimants submit that VIO has not met that standard and that it seeks the settlement agreement out of "desirability" not "materiality", which they say does not satisfy the threshold for compelling disclosure.

45. Claimants argue that because VIO is not a party to the settlement agreement, it is not possible for that agreement to "alter VIO's rights and obligations (if any) under the Shareholders' Agreement." Claimants submit that VIO has not identified "any specific 'issues of fault or damages' relating to claims and defenses advanced by VIO" and say that this amounts to a fishing expedition for information relating to the settlement.

46. In response to VIO's suggestion of a possible *in camera* review, Claimants submit that it is premature and unsupported by the circumstances and accompanying arguments that VIO has put forward.

47. In their reply submission, Claimants argue that VIO's request does not bear on disputed issues in this present arbitration and that it has met neither the New York court standard nor the AAA disclosure standard for ordering production of the "settlement agreement".

   c. **Alpha/ESAH**

48. In response to the Order, on 14 November 2021, in addition to providing confirmation of which capacity the Alpha/ESAH parties would continue to act in these proceedings, they submitted "that they cannot be compelled to reveal the terms of a confidential settlement agreement to a third party."

49. Although invited to do so, Alpha/ESAH made no further submissions in respect of the Order.

---

[3] Citing *De Sapio v. Kohlmeyer*, CL-53.

[4] Citing *Block v. Ghirimoldi*, CL-55.

[5] Citing *Hulse v. A.B. Dick Co.*, CL-57.

ICDR Case No. 01-20-0000-4822
Procedural Order No. 8
Page 10

IV. **Analysis and Decision**

50. As an initial matter, it should be noted that Claimants, throughout their submissions, refer to disclosure of the settlement agreement, which suggests that VIO has requested this. This is incorrect and VIO has repeatedly confirmed that, at this stage, it seeks neither information about the negotiation of the settlement agreement nor any financial arrangements made under that agreement. Instead, VIO's request is focused only on "information about the planned structure after the intended implementation of the deal at the end of November". It submits that it requires this information in order to provide its comments on the Suspension Request and its impact on the integrity of the arbitration. This is the information request that was the subject of the Order and that is the subject of this procedural order.

51. The only issue to be determined is whether VIO has met the standard for disclosure of "information about the planned structure after the intended implementation of the deal at the end of November" at this stage of the proceedings and, relatedly, what that standard is.

52. New York is the seat of the arbitration. New York law governs matters of procedure that are not addressed in the arbitration rules or arbitration agreement.

53. The arbitration is governed by the AAA Commercial Rules; an order for disclosure of information is provided for under Rule 22.[6]

54. Rule 22(a) sets out the authority of the tribunal:

    Authority of arbitrator. *The arbitrator shall manage any necessary exchange of information among the parties with a view to achieving an efficient and economical resolution of the dispute, while at the same time promoting equality of treatment and safeguarding each party's opportunity to fairly present its claims and defenses.*

55. VIO has requested the information invoking notions of the "efficient and economical resolution of the dispute", "equality of treatment" in terms of access to information and "safeguarding its opportunity to fairly present its claims and defenses." The content of these principles is not spelled out in the rules. They need to be determined in the context of the particular case and, if necessary, the procedural law agreed to by the parties.

56. Further, the standard for disclosure of provisions of a confidential settlement agreement to a non-settling party in the arbitration is not a matter directly addressed in the arbitration rules or arbitration agreement. Accordingly, New York procedural law, adapted to the arbitration context, applies in these circumstances.

57. New York law provides that the confidentiality of settlement agreements has limits and that, in appropriate circumstances, a settling party may be compelled to disclose

---

[6] Although VIO referred to Rule 37 and the provisions in Procedural Order No. 1 for applications for interim measures, no request for interim measures was made and the request throughout has been for information.

provisions of a settlement agreement to a non-settling party despite confidentiality provisions. These principles can be applied by a tribunal in the context of an arbitration to the extent that the circumstances requiring disclosure bear upon the integrity of the arbitration process by analogy to the court process in which those cases are decided.

58. The law related to when a New York court may compel discovery by parties to an arbitration is not relevant to the issue in dispute. The issue is the test that a tribunal is to apply in the context of arbitration proceedings, as VIO has requested the Arbitrator to make the Order.

59. In determining whether the circumstances are appropriate ones in which to require disclosure, New York law looks to the possible impact of the settlement agreement provisions on the integrity of the proceedings. As Claimants point out, the "archetypical grounds" for ordering disclosure include situations where the settlement agreement contains admissions of liability or if it results in a settling party continuing to act in the litigation without continuing its claims.

60. This second situation was the focus of the inquiry as to the capacity in which the settling parties would continue in the arbitration and, as a result of the confirmation that Alpha/ESAH would no longer continue in the arbitration in any capacity, eliminates this as a possible basis for relief.

61. However, the "archetypical" grounds are not the only grounds. The focus of the inquiry is whether the provisions of the settlement agreement could affect the rights of the remaining parties in the arbitration or the process itself, including the tribunal's ability to properly assess the evidence. One example is an admission of liability. Another could be evidentiary arrangements between the settling parties. Situations that affect the fairness of the proceedings may even give rise to a duty to disclose the relevant provisions of the settlement agreement.

62. At this stage, VIO seeks only "information about the planned structure after the intended implementation of the deal at the end of November" (the "Requested Information"). The settlement agreement has been concluded but not finalized. VIO must demonstrate how the Requested Information is likely to bear on specific issues of fault and damages in VIO's claims.

63. Regarding existing claims in the arbitration, the claims are based on breach of contract and liability is to be assessed at the time of the alleged breach. VIO submits that the Requested Information is necessary and material to its claim for transfer of shares. However, the Requested Information does not bear on Claimants' potential fault or damages at the time of breach. The planned structure when the Settlement Agreement is concluded should not affect VIO's rights unless admissions relevant to this claim have

been made in the settlement agreement, which may affect those claims going forward if the settlement is finalized.

64. The other scenarios related to the Requested Information that VIO refers to as potentially affecting its claims or defenses do not relate to current claims in the arbitration but instead to potential future breaches of the Shareholder Agreement if shares are transferred to Claimants and Claimants purport to exercise majority rights provided for under the Shareholder Agreement in certain ways. Although these circumstances, if they arise, could affect VIO's rights as a shareholder, VIO has not demonstrated that the Requested Information is "material and necessary" to its existing claims or defenses in the arbitration such that production of the Requested Information should be ordered at this stage.

### V.   Order

65. For the foregoing reasons, the provision of the Order that Claimants and Alpha/ESAH provide VIO "information about the planned structure after the intended implementation of the deal at the end of November" immediately and no later than 15 November 2021 is rescinded.

66. This is without prejudice to VIO's ability to apply for further information regarding the settlement agreement once it has been finalized and appropriate circumstances exist.

67. As no information request is outstanding, VIO is invited to provide its comments in response to the Suspension Request at its earliest convenience and, in light of the upcoming holiday period in the U.S., no later than Tuesday, 30 November 2021.

### VI.   Amendments

68. This Procedural Order No. 8 may be amended or supplemented, and the procedures for the conduct of this arbitration modified, pursuant to such further directions or Procedural Orders as the Arbitrator may from time-to-time issue.

ICDR Case No. 01-20-0000-4822
Procedural Order No. 8
Page 13

Place of arbitration:   New York, New York, U.S.A.

23 November 2021

_____
Tina M Cicchetti
Sole Arbitrator