UNITED STATES DISTRICT COURT
SOUTHEN DISTRICT OF NEW YORK

| | |
|---|---|
| *IN RE APPLICATION OF ZOUZAR BOUKA;*<br>*VISION INDIAN OCEAN S.A.; AND VIMA REAL*<br>*ESTATE S.A.R.L.*<br>*FOR AN ORDER DIRECTING DISCOVERY FROM*<br>*SYMBION POWER SERVICES U.S., INC.;*<br>*SYMBION POWER LLC;*<br>*SYMBION POWER HOLDINGS LLC;*<br>*SYMBION POWER AFRICA, LLC;*<br>*SYMBION ENERGY HOLDINGS LTD.; AND*<br>*PAUL HINKS*<br>*PURSUANT TO 28 U.S.C. § 1782* | Case No. 22 Misc. 00092-RA |

**MEMORANDUM OF LAW IN OPPOSITION TO**
**APPLICATION FOR DISCOVERY PURSUANT TO 28 U.S.C. § 1782**

Emery Celli Brinckerhoff Abady Ward & Maazel LLP
600 Fifth Avenue, 10th Floor
New York, New York 10020
(212) 763-5000

TABLE OF CONTENTS

PAGE NO.

TABLE OF AUTHORITIES ................................................................................................ii-iii

WHY THE APPLICATION SHOULD BE DENIED:...................................................................1

BACKGROUND ...........................................................................................................................3

ARGUMENT .................................................................................................................................11

      I.   THE STATUTORY FACTORS ARE NOT MET ....................................................11

             A.     The Discovery is not "for use" in the Madagascar Proceeding .................12

             B.     The French Proceeding Is Not In Reasonable Contemplation...................15

      II.  THE APPLICATION DOES NOT MERIT THE EXERCISE OF THIS COURT'S
           DISCRETION.........................................................................................................17

             A.     The Madagascar Proceeding Does Not Merit the Court's Discretion .......18

             B.     The French Proceeding Does Not Merit the Court's Discretion...............20

CONCLUSION................................................................................................................22

<u>TABLE OF AUTHORITIES</u>

<u>PAGE NO.</u>

**Cases**

*Brandi-Dohrn v. IKB Deutsche Industriebank AG*,
   673 F.3d 76 (2d Cir. 2012).................................................................................. 11, 17

*Certain Funds, Accts. &/or Inv. Vehicles v. KPMG, L.L.P.*,
   798 F.3d 113 (2d Cir. 2015)...................................................................................... 12

*In re Accent Delight Int'l Ltd.*,
   869 F.3d 121 (2d Cir. 2017)........................................................................... 12, 13, 20

*In re Al-Attabi*,
   No. 21-MC-207, 2021 WL 4027021 (S.D.N.Y. Sept. 3, 2021).................................. 20

*In re Harbour Victoria Inv. Holdings Ltd. Section 1782 Petitions*,
   No. 15-MC-127, 2015 WL 4040420 (S.D.N.Y. June 29, 2015).................................. 16

*In re Noguer*,
   No. 18-MC-498, 2019 WL 1034190 (S.D.N.Y. Mar. 5, 2019) ................................. 13

*In re Sargeant*,
   278 F. Supp. 3d 814 (S.D.N.Y. 2017)................................................................... 15, 16

*Intel Corp. v. Advanced Micro Devices, Inc.*,
    542 U.S. 241 (2004)................................................................................................. 15

*Jiangsu Steamship Co. v. Success Superior Ltd.*,
   No. 14 Civ. 9997, 2015 WL 3439220 (S.D.N.Y. Feb. 5, 2015) ................................ 18

*Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*,
   895 F.3d 238 (2d Cir. 2018)...................................................................................... 17

*Mees v. Buiter*,
   793 F.3d 291 (2d Cir. 2015)................................................................................. 12, 19

*Pott v. Icicle Seafoods, Inc.*,
   945 F. Supp. 2d 1197 (W.D. Wash. 2013)................................................................ 13

*Schmitz v. Bernstein Liebhard & Lifshitz, LLP*,
   376 F.3d 79 (2d Cir. 2004)........................................................................................ 17

*U.S. v. Sealed 1, Letter of Request for Legal Assistance from the Deputy Prosecutor Gen. of the Russian Fed'n*,
   235 F.3d 1200 (9th Cir. 2000) .................................................................................. 19

**Statutes**

28 U.S.C § 1782 ................................................................................................. *passim*

28 U.S.C. § 1782 .................................................................................................. 9, 21

Fed. R. Civ. P. 26 .................................................................................................. 19

**Other Authorities**

*American Assistance to Litigation in Foreign and International Tribunals: Section 1782 of Title 28 of the U.S.C. Revisited*, 25 Syracuse J. Int'l L. & Com. 1 (1998) ................................... 19

International Litigation Under the United States Code,
    65 Colum. L. Rev. 1015, 1026 (1965) ............................................................................ 15

## WHY THE APPLICATION SHOULD BE DENIED:
## FAKE FOREIGN PROCEEDINGS

Zouzar Bouka's application—to obtain discovery for use in "foreign proceedings" in Madagascar and France—is subterfuge. He cannot use the discovery in Madagascar because his case is on appeal, he initiated the proceeding on behalf of a company over which he has no authority, and newly revealed documents show that he has privately renounced that proceeding. His fallback justification, a so-called "contemplated" litigation in France, is so nascent that Bouka does not even know what claims he might bring. The proceeding where Bouka really wants to use these materials is not "foreign"; it is a domestic arbitration pending in New York, where the arbitrator has already rejected this same discovery. But Bouka cannot obtain discovery to evade a domestic arbitrator's rulings, and proceedings that are pending on appeal or have no prospect of ever being filed are no basis to compel discovery under 28 U.S.C § 1782.

Bouka's problems began with a dispute about a power plant in Madagascar. His companies Vision Indian Ocean, S.A. and VIMA Real Estate S.A.R.L. (collectively "Bouka") entered into an agreement to help develop the Mandroseza Power Plant with Symbion Power LLC ("Symbion").[1] In the midst of that project, a commercial dispute arose regarding management fees. Symbion then commenced an arbitration against Bouka and others in New York, the dispute resolution mechanism under the terms of the parties' shareholders' agreement. After extensive discovery and related proceedings, all parties except Bouka agreed to settle their claims in arbitration.

---

[1] Bouka seeks discovery from four additional Symbion entities. Three of them—Symbion Power Services U.S., Inc., Symbion Power Holdings LLC, and Symbion Power Africa, LLC—were not involved with the transactions in dispute. *See* Declaration of Paul Hinks, dated April 22, 2022 ("Hinks Decl."), ¶ 6. The fourth, Symbion Energy Holdings, Ltd., is no longer affiliated with the other Symbion entities.

Shortly after Symbion filed its arbitration, in a purely retaliatory action Bouka sought to create leverage for himself by filing a sham criminal complaint in Madagascar against Symbion's CEO, Paul Hinks, and three other Symbion employees, concerning the same subject matter. But, while Bouka claimed to have filed the Madagascar proceeding as a "gerant" or director on behalf of the company that was allegedly a victim of the crime, SPARL, such action would have required approval of SPARL's parent company. Such approval was never given, and all of the directors of the parent company have explicitly renounced this criminal proceeding in writing. Moreover, Bouka is not even a recognized shareholder of SPARL, and all of the other directors of SPARL have likewise renounced the proceeding.

Even more significantly, Bouka himself has acknowledged the criminal complaint is meritless: he offered to renounce the proceeding in exchange for a more favorable civil settlement in a separate, unrelated, litigation with Hinks and others about ownership of a hotel where Bouka had failed to meet his financial obligations. Bouka signed an averment that he would withdraw the complaint and in it he stated that his decision to withdraw was "final." However, once he received the benefits of this civil bargain, obtaining ownership of the hotel, Bouka reneged and then refused to submit the letter to the court in Madagascar. The spurious "criminal complaint" remains pending on an appeal of its validity.

Bouka's latest attempt to improve his position in the New York arbitration is to seek virtually the same discovery here, under 28 U.S.C. § 1782, that the arbitrator rejected,

purportedly in aid of two fake foreign proceedings in Madagascar and France. But neither proceeding upon which Bouka's application is based can support § 1782 discovery.[2]

Applications under § 1782 must satisfy the statutory requirement that the documents sought are "for use" in a foreign proceeding. Neither of Bouka's proceedings meet this definition. Finally, regardless of the statutory impediments to discovery, this Court has the discretion to deny Bouka's application because it is an attempt to circumvent the discovery rulings of a domestic arbitrator.

## BACKGROUND

This case arises from a commercial dispute between Symbion and Bouka in Madagascar.

### *Symbion Power*

Symbion is a power development company that develops power plants and other necessary infrastructure to create electricity and spur economic growth in the developing world. *See* Hinks Decl. ¶ 2. Symbion has successfully rehabilitated and operated power plants in highly unstable regions around the world, including eleven large-scale power projects in Iraq, three in Afghanistan, four in Tanzania, two in Rwanda and one each in Nigeria, Kenya and Madagascar. Symbion companies have developed and invested in close to 1,400 megawatts of installed generation capacity in Africa. *Id.* ¶ 3. Symbion has amassed deep expertise in the development of power plants in developing nations, has been awarded numerous contracts by the United States Department of Defense and was selected to assist the Obama Administration in the development

---

[2] Under the guise and protection of the litigation privilege, Bouka has spun a false and defamatory tale of impropriety in his 1782 Application that is intended to harm Hinks' reputation and business activities. This may well be the primary purpose of this 1782 filing. It appears that Bloomberg News in South Africa has been supplied Bouka's filings in this Court. The false statements in these filings appear calculated to increase Bouka's leverage in the arbitration and to obtain documents he was denied in that forum. The result, of course, is to inflict Hinks with reputational damage by publicizing the false criminal charges levied in Madagascar.

of its "Power Africa" initiative. *Id.* Power Africa was launched by President Barrack Obama at a Symbion power plant in 2013.

***The Madagascar Plant Development***

As part of its ongoing infrastructure investment business, one of Symbion's related entities, Symbion Power Mandroseza S.A.R.L. ("SPARL"), entered into an agreement in 2015 with the government of Madagascar to rehabilitate the country's struggling national power utility—the Mandroseza Power Plant (the "Plant"). *Id* ¶ 5.

To aid in the development of the Plant and to procure additional investment projects, which Symbion had been negotiating with the government of Madagascar, Symbion included Bouka in the venture. *Id* ¶ 7. As consideration for Bouka participating in the project, Bouka was to assist Symbion in liaising with the local population and government agencies, and in developing more power projects in Madagascar. *Id.*

Symbion also agreed to pay Bouka $1.2M as a success fee when the Plant was fully operational, and to allot a 5% free equity in the project to Bouka providing he passed a due diligence process by the authorities in Mauritius where the investment company was formed. *Id.* ¶ 8. Despite his failure to contribute anything meaningful to the project or to invest in it Bouka was fully paid the $1.2M success fee. *Id.* The 5% free equity was not allotted to Bouka because he could not meet the mandatory requirements of local regulators in Mauritius. *Id.* ¶ 9. In the end, Bouka did almost nothing to assist Symbion in the massive undertaking of rehabilitating and operating the power plant, and he failed to deliver on any other new investment opportunities for which he was responsible. *Id.* ¶ 10.

To further facilitate the development of the Madagascar plant, Symbion entered into a series of agreements with a third-party, financial equity investor, Alpha Innovations

4

Management, Ltd and ESAH Power (collectively "Alpha"). *Id.* ¶ 11. Alpha provided a significant investment to partially fund the development of the Plant, while Symbion also provided financing and committed to developing and managing the Plant's operations to bring electricity to Antananarivo, Madagascar. *Id.* The completion of the rehabilitation of the Mandroseza Power Plant by the Symbion management team represented a marked improvement in the stability of the power supply in Antananarivo. The success of Symbion was hailed at a public inauguration event  by Madagascar's Head of State, government Ministers, the US Ambassador to Madagascar and a Congressional Delegation from Washington DC. *Id.* ¶ 12.

***The New York Arbitration***

During the course of the Power Plant project, a financial dispute arose between Symbion, Alpha, and later with Bouka too. *Id.* ¶ 13. The dispute centered on the costs of managing the Plant, and the appropriate payment to Symbion for its services in managing and operating it where there had been various agreements reached about fees which had been low at first, but adjusted later to properly reflect Symbion's actual costs. *Id.* To resolve these commercial disputes, Symbion followed the dispute resolution provisions of the parties' shareholders agreement and initiated an arbitration venued in New York City against Alpha and Bouka with the International Centre for Dispute Resolution (the "ICDR Arbitration") at the American Arbitration Association ("AAA"). *Id.* ¶ 14. In response, Alpha and Bouka both filed counter-claims against Symbion, and the matter proceeded to discovery. *Id.* ¶ 15.

Significant discovery took place over the course of the arbitration, including voluminous (thousands of) documents submitted by Symbion regarding the management fees in dispute—the legitimate fees that Bouka has now filed this petition claiming were "embezzled." *Id.* ¶ 16. As these payments are at the center of the dispute *that Symbion initiated*, Symbion provided all

relevant financial documents to both Alpha and Bouka. *Id.*; Hinks Decl. Ex. A. Bouka provided

minimal documentation which reflected his lack of contribution to the project and general lack of

any engagement. Hinks Decl. ¶ 17.

After this discovery was completed, the Principals of Symbion Energy Holdings, Richard

Westbury and his partner Ted Kalborg and their company SAHOUN, negotiated a settlement

with Eytan Stibbe of Alpha and agreed to a mutual dismissal of their claims against one another.[3]

*Id.* ¶¶ 17-18. Hinks was not directly involved in these negotiations but he was advised by

Westbury and Kalborg that Stibbe had told them he was taking care of Bouka's interests in

accordance with the general terms of the settlement agreement. *Id.* ¶ 20. To Hinks' surprise, he

was subsequently told that Bouka had refused to settle his claims in the arbitration,

notwithstanding significant efforts to satisfy him. *Id.* ¶ 21. Bouka has since embarked on a

crusade to obtain the Symbion/Alpha's settlement agreement. *Id.* ¶ 23. Bouka has made

numerous inflammatory accusations claiming he was prejudiced by Symbion's confidential

settlement agreement with Alpha and a subsequent related transfer of certain ownership interests

in the Plant to a third-party, an associate of Groupe Filatex ("Groupe Filatex"). *Id.*[4]

First, Bouka attempted to obtain these agreements through the ongoing commercial

arbitration. Symbion, Bouka, and Alpha, were each given opportunities to brief whether Bouka

was entitled to review the agreements, and Symbion and Bouka provided extensive briefing

---

[3] Following this settlement, neither Symbion Power LLC nor Mr. Hinks has any ownership interest in the Plant . The only Symbion entity that has shares in the power plant is Symbion Energy Holdings Ltd—a Cyprus company controlled by Lord Richard Westbury and Ted Kalborg, as well as the company they control in the British Virgin Islands (BVI), SAHOUN limited. Hinks Decl. ¶ 22.

[4] It is notable that Groupe Filatex and its associates undertook extensive legal and financial due diligence to facilitate the acquisition of its shares and they did not identify any crimes or embezzlements in their reports, or in their negotiations even though they had knowledge of the existence of the sham criminal case.

while Alpha submitted a brief statement stating that the agreements should remain confidential. *See id.* ¶ 24; Hinks Decl. Ex. B at 5-9.

The Arbitrator thoroughly analyzed the parties' positions and agreed with Symbion that Bouka had not "demonstrated that the Requested Information is 'material and necessary' to its existing claims or defenses in the arbitration such that production of the Requested Information should be ordered at this stage." *Id.* ¶ 25; Hinks. Decl. Ex. B at 12. Rather than accept this outcome, Bouka attempted to circumvent the arbitrator's ruling by threatening third-parties to provide him the agreement that the arbitrator would not. *Id.* ¶ 27.

On December 10, 2021, Bouka sent a letter to Groupe Filatex and other third-parties he believes are acquiring an ownership interest in the Plant as a result of Alpha and Symbion's settlement. *Id.*; Hinks Decl. Ex. C. This letter made defamatory accusations against Symbion, and threatened litigation against those third-parties. *Id.* These accusations and threats were all in furtherance of Bouka's ultimate demand, that these entities provide him with "*details of any term sheet, agreement (draft or final), or any other document that purports to deal with any interest in the Plant, SPARL and/or SMML.*" *Id.* But Bouka's attempted shakedown failed and these third-parties did not provide him with the confidential agreements. As they should not. *Id.* ¶ 27.

### *The Madagascar Criminal Proceedings*

Shortly after Symbion properly initiated the commercial arbitration against Alpha and Bouka, Bouka attempted to create leverage by filing a sham criminal complaint against Symbion's Chief Executive Officer, Paul Hinks, and other Symbion Managers of the Plant. The complaint was made in secret to Madagascar's Pôle Anti-Corruption Court ("PAC"). *Id.* ¶ 29. Bouka based this complaint on the false accusation that the money that Symbion had been paid

to manage the power plant—i.e. the same money in dispute in New York arbitration initiated by Symbion—had been "embezzled." *Id.* It had not and Bouka's complaint is a sham.

While Bouka purported to have filed this PAC complaint on behalf of SPARL, Bouka did not have consent from *any* of the company's shareholders. *Id.* ¶ 30. In fact, every single shareholder and director of SPARL, including Bouka, has renounced the criminal proceeding.

First, the directors of SPARL's parent company have completely renounced the proceeding. These directors have all signed a letter explaining that "for any such complaint to be filed in the name of, or on behalf of, our subsidiary company, the majority of the shareholders of SYMBION MANDROSEZA MAURITIUS LIMITED" must approve such action." Hinks Decl. Ex. D. The directors' letter then makes clear that such approval was never given stating:

> We did not approve of the action that was unilaterally taken by Zouzar BOUKA. We do not deem such action to be in the benefit or need of SYMBION POWER MADORSEZA SARL. We hereby wish to withdraw from the complaint made in the name and on behalf of SYMBION POWER MADROSEZA SARL…"

*Id.*

Second, the remaining gerants of SPARL—the same position held by Bouka—have likewise signed a letter stating that they: "contest[] the complaint lodged by Mr. Zouzar Bouka on behalf of [the company]"; "declare to withdraw from said complaint"; and that "in filling the complaint with [PAC], Mr. Zouzar BOUKA was not exercising any authority for the benefit or need of SYMBION POWER MANDROSEZA SARL or its majority shareholders." Hinks Decl. Ex. E.

Nonetheless, the supposed "indictment" against Mr. Hinks remains pending on appeal before the Court of Cassation at the Supreme Court of Madagascar. Hinks Decl.

8

¶ 34. No criminal charges or proceedings will move forward, and no evidence can be presented or accepted, until there is a ruling on this pending appeal. *Id.* ¶ 35.

### The Hotel Settlement

Separate and apart from the ICDR arbitration, Mr. Hinks and other third parties recently had another commercial dispute Bouka, which arose out of Bouka's failure to meet his financial commitments concerning their joint ownership interest in a hotel in Madagascar called "Marovasa." That dispute was litigated in London commercial court (the "Marovasa Dispute"). *Id.*36. Although the Marovasa Dispute was unrelated to the allegations in Bouka's criminal complaint, Bouka sought to use it to extract a more favorable settlement in this civil litigation. *Id.* ¶ 37.

As part of the settlement of the Marovasa Dispute, Bouka agreed to file a letter with the PAC Court withdrawing his criminal complaint against Hinks, and Bouka drafted and executed such a letter. *Id.* ¶ 38; Hinks Decl. Ex. F. This letter affirmatively states that that Bouka wished to "withdraw [his] complaint," "waive all action against Paul Hinks," and ended with the clear declaration that "my decision is final." *Id.*[5]

### Bouka's § 1782 Application

Bouka now files an application pursuant to 28 U.S.C. § 1782 seeking discovery for use in two "foreign proceedings." First, Bouka seeks discovery for use in the PAC proceeding claiming that, as a gerant of SPARL, he is able to submit evidence to the prosecutor for use in a potential

---

[5] Bouka conditioned his submission of this letter to the PAC Court, however, on his getting agreement from the other SPARL shareholders to withdraw the criminal complaint within a specified amount of time. Hinks Decl. ¶ 39. When that time frame was not met because Alpha shareholders no longer wished to deal with Bouka, Bouka then declined to submit his letter. *Id.* Nonetheless, after seeing his behavior all shareholders in SPARL have now signed letters disavowing the PAC proceeding, *see* Hinks Decl. Exs. D and E. Having obtained everything he wanted from the Marovasa settlement, however, Bouka now refuses to honor his agreement to withdraw the criminal proceedings. He states that because he didn't get a response from the Alpha shareholders Eytan Stibbe and Alexander Oppenheim within seven days, he no longer is required to withdraw the complaint. Hinks Decl. ¶ 39.

case against Hinks. Bouka's Application for Discovery pursuant to § 1782, ECF No. 2 ("Bouka App.") at 8-9. While Bouka mentions that the indictments are currently being appealed, he fails to mention that it is undisputed that there is no forum for the submission of evidence until that appeal is resolved. Nor does he disclose that all directors of SPARL's parent company and all other gerants of SPARL have disavowed the proceeding and that he himself has disavowed the proceeding when it was beneficial for him to do so as part of an unrelated civil litigation.

Bouka also invokes a prospective litigation against Symbion and Groupe Filatex in France in support of his 1782 petition. *Id.* at 9-11. Bouka states that he has hired an attorney, and "plan[s]" to sue Symbion and Groupe Filatex regarding Groupe Filatex's acquisition from Symbion of an ownership interest in the Plant as a result of Symbion's settlement with Alpha. *Id.* at 9. Despite stating his intent to sue Symbion and Groupe Filatex based on these agreements, Bouka acknowledges both (1) that he does not know the terms of Symbion's settlement agreement with Alpha, *see id.* (referring to the settlement terms as "unknown"); and (2) that he does not know the terms of Groupe Filatex's acquisition of the Plant, *see id.* (acknowledging that "public reports have not disclosed exactly how Groupe Filatex purports to own the Plant").

Bouka concedes that he needs discovery from this proceeding in order to determine whether he has any litigable claim: to "obtain access to those agreements in order to understand the exact details of how Groupe Filatex came to purportedly acquire the Plant." *Id.* at 11. Despite admitting that he does not know the terms of those agreements, Bouka nevertheless claims he should be entitled to discovery for litigation seeking to declare these agreements "unlawful and void." *Id.* at 10.

Even though Bouka bases his request on (1) a proceeding in Madagascar that currently cannot receive evidence and may never receive evidence; and (2) a hypothetical proceeding in France to nullify two agreements he has never seen, he seeks extensive and invasive discovery.

Bouka seeks to serve six deposition subpoenas, five of which are corporate depositions regarding twelve topics, and six document subpoenas covering numerous aspects of Symbion's finances and the confidential agreements that have already been litigated in arbitration. *See* ECF Nos. 1-1 through 1-12. Nearly all of the financial information sought has already been produced to Bouka as part of the ICDR Arbitration, Hinks Decl. ¶ 16; Hinks Decl. Ex. A., and Bouka's request for agreements between Symbion, Alpha, and Groupe Filatex appears to be yet another attempt to sidestep the ICDR Arbitrator and gain access to the confidential documents to which the arbitrator expressly ruled he was not entitled.

**ARGUMENT**

Bouka's discovery application should be denied because it fails both the statutory and discretionary requirements of § 1782.

## I.      THE STATUTORY FACTORS ARE NOT MET

Before a court may consider whether to exercise its discretion to grant an application under § 1782, three threshold statutory criteria must be met: (1) the object of the application must reside (or be found) in the district; (2) the discovery must be for use in a foreign proceeding; and (3) the application must be made by an interested person in that proceeding. *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012).

Bouka's application fails this statutory threshold because the discovery he seeks cannot be "for use" in either of the two foreign proceedings he invokes.

### A.      The Discovery is not "for use" in the Madagascar Proceeding

Bouka cannot use the documents he seeks in the Madagascar criminal proceeding because (1) he cannot submit evidence in that tribunal; and (2) the complaint he filed is a sham.

#### 1.   Bouka Cannot Submit Evidence in the Madagascar Proceeding

At the outset, Bouka cannot obtain discovery "for use" in the Madagascar proceeding because discovery cannot be used there at this stage of the proceeding. Discovery can only be sought "for use" in a foreign proceeding when the discovery "will be employed with some advantage or serve some use in the proceeding." *Mees v. Buiter*, 793 F.3d 291, 298 (2d Cir. 2015). When an applicant cannot prove that it has a means of "injecting the evidence into the proceeding," the "for use" prong cannot be satisfied. *Certain Funds, Accts. &/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 120 (2d Cir. 2015). "The key question, therefore, is not simply whether the information sought is relevant, but whether the [applicants] will actually be able to *use* the information in the proceeding." *Id. See also In re Accent Delight Int'l Ltd*., 869 F.3d 121, 131 (2d Cir. 2017) ("Although we have approached the issue according to the particular facts of each case and the arguments presented, we have focused in each on the *practical ability* of an applicant to place a beneficial document—or the information it contains—before a foreign tribunal.").

Bouka acknowledges he has no "means of injecting evidence" into the Madagascar criminal proceeding because it is on appeal and, instead, he can only use any documents when "the matter is remanded for trial." *See* Bouka App. 9. But the matter has not been remanded for trial and may never be. Unless and until the case is permitted to proceed, Bouka implicitly concedes that he *does not* "have the right to participate in proceedings and present evidence." Bouka has no "practical ability" at this time to place any information he obtains from his

application before the foreign tribunal, *Accent Delight Int'l Ltd.*, 869 F.3d at 131, and he may never have such ability.

The only cases to which Bouka cites to support the claim that he is entitled to § 1782 relief in this appellate posture are cases where the applicant was permitted to submit the evidence directly to the appellate court. *See Pott v. Icicle Seafoods, Inc.*, 945 F. Supp. 2d 1197, 1199 (W.D. Wash. 2013) ("Pott, however, contends that while the time to introduce new evidence in the appellate process is limited, he has not exhausted his right of appeal."); *In re Noguer*, No. 18-MC-498, 2019 WL 1034190, at *3 (S.D.N.Y. Mar. 5, 2019) ("Petitioners ha[ve] carried their burden of identifying a discernible procedural mechanism for introducing the evidence they seek in the Andorran appellate proceedings."(cleaned up)). Unlike these cases, Bouka has not identified any allowable timeframe or "discernible procedural mechanism" for him to introduce discovery to the Malagasy appellate court, and none exists.

Because his application is dependent on a speculative future remand for trial that may never occur, Bouka's application is impermissibly premature.[6]

### 2. The Madagascar Criminal Proceeding is a Bouka-Created Sham

Most fundamentally, the discovery Bouka seeks cannot be used in Madagascar because Bouka commenced the criminal proceeding without authority and he has subsequently renounced it.

Bouka purported to bring the Madagascar proceeding in the name of a corporation—Symbion Power Mandroseza SARL—but that company never authorized Bouka to commence the proceeding and has since disavowed it. The company's directors have explicitly stated that

---

[6] Bouka's citations to various cases for the proposition that "the ability to submit evidence as a *partie civile*" in foreign criminal proceedings satisfies the "for use" prong is a red herring. Bouka App. 17. It is irrelevant whether Bouka could submit evidence *if the case were remanded for trial*. The case is currently on appeal and it is *undisputed* that Bouka has no such ability to submit evidence in this posture.

13

"For any such complaint to be filed in the name of, or on behalf of [the company] the majority of the shareholders . . . must approve such action" and that the company does "not approve of the action that was unilaterally taken by Zouzar BOUKA," and does not "deem such action to be in the benefit or need of [the company] and *wishes to withdraw from the complaint inappropriately made in its name*." *See* Hinks Decl. Exs. D & E (emphasis added). Bouka should not be permitted to obtain evidence for use in a criminal proceeding when the party he purports to act on behalf of has expressly disavowed the proceeding and seeks to withdraw from it altogether.

Moreover, Bouka cannot seek discovery in aid of proceedings that he has explicitly renounced. In order to gain leverage in a completely unrelated civil litigation, Bouka wrote and signed a statement to the prosecutor in the criminal proceeding specifically asking "to withdraw my complaint," and stating that his decision is "final." *See* Hinks Decl. Ex. F. While this statement was never submitted to the prosecutor because Bouka claimed he did not receive the timely agreement of the other shareholders, all of those shareholders have since signed letters renouncing the proceedings and stating that Bouka never had the authority to initiate the proceedings in the first place. Hinks Decl. Exs. D & E. In any event, the fact that Bouka ultimately invoked a technicality to avoid submitting the letter does not change the fact that Bouka renounced the criminal complaint and that he sought to use the Madagascar criminal proceeding to gain leverage in his civil disputes with Mr. Hinks and Symbion. This Court should not sanction Bouka's continued abuse of a foreign court system and his contempt for legal process in the United States to pursue his illegitimate and unscrupulous financial objectives.

14

**B.      The French Proceeding Is Not In Reasonable Contemplation**

Bouka cannot obtain discovery for use against Symbion and Groupe Filatex and other
third parties in France because these potential contemplated proceedings are not sufficiently
determinate to be a basis for § 1782 discovery.

While a foreign proceeding need not have been commenced to justify § 1782 discovery,
the proceeding must "be 'within reasonable contemplation.'" *Intel Corp. v. Advanced Micro
Devices, Inc.*, 542 U.S. 241, 259 (2004) (citing Hans Smit, "International Litigation Under the
United States Code," 65 Colum. L. Rev. 1015, 1026 (1965)). To meet this standard, a § 1782
applicant must present, at a minimum, a concrete basis from which the court can determine that
the contemplated proceeding is more than just "a twinkle in counsel's eye." *KPMG,* 798 F.3d at
124.

 For example, the Second Circuit upheld the denial of a § 1782 application for a
contemplated proceeding when the applicant's demonstration that the proceeding was
contemplated was limited to the showing that they "had retained counsel and were discussing the
possibility of initiating litigation." *Id.* (emphasis omitted). There, the court reasoned, "at the time
the evidence was sought … [the applicant] had done little to make an objective showing that the
planned proceedings were within reasonable contemplation." *Id.*

Similarly, in *In re Sargeant*, another court in this District explained that the discovery in
question *cannot be sought in order to assess whether or not to file suit*. 278 F. Supp. 3d 814, 823
(S.D.N.Y. 2017). As the court explained, the "assertion that [the applicant] plans to use the
evidence he seeks to assess whether to initiate actions … underscores the mere speculativeness
of the contemplated proceedings, and is plainly insufficient." *Id.* (cleaned up). *See also id.*
("Courts must guard against the specter that parties may use § 1782 to investigate whether

litigation is possible before launching it."); *In re Harbour Victoria Inv. Holdings Ltd. Section 1782 Petitions*, No. 15-MC-127, 2015 WL 4040420, at *8 (S.D.N.Y. June 29, 2015) (Nathan, J.) (rejecting the "use of nonexistent, purely hypothetical proceedings to satisfy § 1782's requirements").

Here, as in these cases, Bouka's supposed French litigation is far too speculative to satisfy § 1782. Put simply, his planned litigation is entirely dependent on the terms contained within the very documents he seeks. Bouka claims to be filing suit as a result of "Symbion's sale of interests in the Plant to the Groupe Filatex" and "Symbion's settlement agreement on unknown terms with Alpha" and with the goal of "declar[ing] [that] the [Groupe Filatex] transaction was unlawful and void." Bouka App. 9-10. But Bouka offers nothing in furtherance of this supposed litigation other than that he has retained counsel and sent a letter to the alleged Defendants speculating about what these agreements might contain. *Id.* at 9.

Bouka acknowledges that he has no idea what the terms are of the transactions that he seeks to nullify. And, of course, he has asserted no damage to him or prejudice to any of his ongoing activities to give him standing in France or anywhere else. With respect to Groupe Filatex's supposed acquisition of the Plant, Bouka admits that "public reports have not disclosed exactly how Groupe Filatex … own[s] the [Mandroseza] plant," and that he has brought this proceeding to "obtain access to those agreements in order to understand the exact details of how Groupe Filatex came to purportedly acquire the Plant." *Id.* at 9, 11. This is exactly the premise— to "investigate whether litigation is possible before launching it"—this Court rejected in *In re Sargeant*, 278 F. Supp. 3d at 823.

With respect to Symbion's settlement with Alpha and the resulting ownership stakes in the Plant, Bouka likewise admits that this settlement was on "unknown terms." Bouka App. 9.

Moreover, while Bouka has tried to obtain the ICDR Arbitration settlement with Alpha both through a request to the arbitrator and through an extra judicial request to Groupe Filatex itself, *see* Hinks Decl. Exs. B & C, both of these endeavors failed, and any supposed lawsuit based on that agreement is likewise entirely speculative.

## II.   THE APPLICATION DOES NOT MERIT THE EXERCISE OF THIS COURT'S DISCRETION

Even if the statutory requirements of § 1782 were met, the Court should exercise its discretion to deny 1782 discovery. *Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 83-84 (2d Cir. 2004).

The Supreme Court has identified several factors for courts to consider in weighing whether to use its discretion to grant a § 1782 application: (1) whether the person from whom discovery is sought is a participant in the foreign proceeding; (2) the nature of the foreign tribunal, the character of the proceeding underway, and the foreign tribunal's receptivity to federal-court assistance; (3) whether the application conceals an attempt to circumvent the proof-gathering restrictions of a foreign country; and (4) whether the application is unduly intrusive or burdensome. *See Intel*, 542 U.S. at 264-65; *Brandi-Dohrn*, 673 F.3d at 80-81. "The *Intel* factors are not to be applied mechanically. A district court should also take into account any other pertinent issues arising from the facts of the particular dispute." *Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 245 (2d Cir. 2018).

The *Intel* factors and the overall context surrounding these disputes make clear that neither the Madagascar proceeding nor the potential French litigation merits the exercise of the Court's discretion.

17

## A.      The Madagascar Proceeding Does Not Merit the Court's Discretion

The Madagascar proceeding does not merit the Court's discretion for four reasons.

As an initial matter, Mr. Hinks is a party to the sham criminal proceeding. "When the person from whom discovery is sought is a participant in the foreign proceeding . . . the need for § 1782(a) aid generally is not as apparent…" *Jiangsu Steamship Co. v. Success Superior Ltd*., No. 14 Civ. 9997, 2015 WL 3439220, at *2 (S.D.N.Y. Feb. 5, 2015) (cleaned up). In the event that the case is remanded for trial, any discovery that is needed from Mr. Hinks can be obtained at that time. Bouka's claims that Mr. Hinks is currently not physically in Madagascar is irrelevant. Bouka App. 21. Mr. Hinks has retained local counsel in Madagascar and the United States and he will vigorously litigate his defense which will expose Bouka's false allegations.

Second, the "nature of the foreign tribunal [and] the character of [the] proceedings underway" also favor denial of Bouka's petition. *Intel*, 542 U.S. at 264-65. As set forth above and as conceded by Bouka, the PAC court currently will not receive any evidence while the Mr. Hinks' indictment is pending on appeal. *See* Part I.A.1, *supra.* Bouka simply assumes that there will be a criminal trial where evidence will be accepted. *See* Bouka App. 22 ("The criminal trial will turn…"). But that assumption is speculative at best, given the palpable falsity of the criminal complaint and the evidence of the requests to withdraw it.

There may never be a criminal trial, and the character of the current proceedings—a pending appeal where new evidence is not accepted—does not support § 1782 relief. For the same reasons, Bouka's petition is largely an attempt "to circumvent proof-gathering restrictions of a foreign country," *Intel*, 542 U.S. at 264-65, as all discovery in the criminal proceeding is expressly stayed while the appellate court considers Mr. Hinks's appeal.

Bouka's attempt to use the Madagascar criminal courts to improve his leverage in unrelated civil proceedings is another reason to deny his application. A court may deny a § 1782 application in its discretion where the application is being sought "simply . . . to harass . . . opponents" or where "'the foreign proceedings are unfair or incompatible with domestic notions of propriety.'" *U.S. v. Sealed 1, Letter of Request for Legal Assistance from the Deputy Prosecutor Gen. of the Russian Fed'n*, 235 F.3d 1200, 1205-06 (9th Cir. 2000) (quoting Hans Smit, *American Assistance to Litigation in Foreign and International Tribunals: Section 1782 of Title 28 of the U.S.C. Revisited*, 25 Syracuse J. Int'l L. & Com. 1 (1998)).

Bouka's conduct—commencing a criminal prosecution without authority and then tactically renouncing it for civil gain—makes clear he is using the Madagascar courts to harass his adversary in a civil dispute. This behavior is "incompatible with domestic notions of propriety" and this Court should not assist his continued exploitation of foreign criminal courts for his own commercial gain. *Id*.

Finally, Bouka's application is unduly burdensome because he has already obtained the documents he seeks that are relevant to the PAC proceedings (i.e. the information about Symbion's management fees that he has falsely accused Hinks of "embezzling") as part of the ICDR Arbitration. *See* Hinks Decl. § 16; Hinks Decl. Ex. A. Bouka's assertion that this discovery from Symbion is "Unobtainable Absent Section 1782 Assistance," is patently false, Bouka App. 20-21, and it would be unnecessarily burdensome to request that Symbion compile and produce these voluminous documents for a second time. *Mees*, 793 F.3d at 302 ("a district court evaluating a § 1782 discovery request should assess whether the discovery sought is overbroad or unduly burdensome by applying the familiar standards of Rule 26 of the Federal Rules of Civil Procedure."); Fed. R. Civ. P. 26(b)(1)(C)(i) (prohibiting discovery that is

"unreasonably cumulative or duplicative"). As Bouka already has what he seeks with respect to the funds that are at the center of his criminal accusations, his petition seems little more than a publicity campaign in his ongoing disputes with Mr. Hinks and Symbion. It appears that Bouka has been sharing his 1782 application with reporters in the media in the hope they will publish a one-sided story that reflects his false narrative. *See* footnote 2, *supra*.

### B.   The French Proceeding Does Not Merit the Court's Discretion

The supposed French proceeding also does not merit the Court's discretion.

First and foremost, Bouka is using the § 1782 process to attempt to obtain the discovery necessary to bring a litigation—an abuse of process that courts have consistently rejected. *See* Part I.B, *supra*. Even if the proceeding were reasonably contemplated, this litigation would simply be an attempt to circumvent the ICDR Arbitration.

The ICDR Arbitration is still pending and subject to confidentiality provisions, and Bouka has tried and failed to obtain the exact documents and depositions he now seeks in this proceeding. *See* Hinks Decl. Ex. B. Once that endeavor failed, he tried to intimidate third parties into giving him the documents directly. Hinks Decl. Ex. C. Once that endeavor also failed, Bouka filed this petition, incredibly claiming he needs these documents because he is going to file a lawsuit in France based on agreements he has never seen and does not have access to. It is apparent that Bouka's real desire to obtain these documents is for use in the ICDR Arbitration. He should not be permitted to concoct a foreign proceeding in order to sidestep the express rulings of the arbitrator.[7]

---

[7] Bouka's support for his attempt to circumvent an arbitrator's rulings is inapposite. In *Accent Delight*, the court held that once a § 1782 petition is granted, the applicant does not need to file separate petitions to use the same discovery in other proceedings, 869 F.3d at 133-134. *In re Al-Attabi* follows *Accent Delight's* holding for the same proposition. No. 21-MC-207, 2021 WL 4027021, at *2 (S.D.N.Y. Sept. 3, 2021). These cases support the use of lawfully obtained discovery in multiple proceedings—not the use of § 1782 to circumvent arbitral rulings.

Moreover, even if the French proceeding were to move forward, Symbion would be a party. Bouka claims to "reasonably contemplate bringing civil proceedings in France against *Symbion*, Groupe Filatex, Energiestro, and Okan Partners…." Bouka App. 17 (emphasis added). Bouka offers no explanation as to why he cannot obtain the discovery he seeks from Symbion in the contemplated litigation itself. Even were Symbion not a named party, any agreements between "Symbion and Groupe Filatex," *id*. at 24, could just as easily be obtained from Groupe Filatex as a party. The fact that Bouka seeks this discovery from the very Defendants in his supposed French litigation further underscores that he is using § 1782 to try to create a foreign litigation in aid of a pending domestic arbitration, not "in aid" of any foreign proceeding.

## CONCLUSION

Bouka's application for discovery in aid of the Foreign Proceedings fails to satisfy the requirements of 28 U.S.C. § 1782 and it does not merit the exercise of this Court's discretion. It should be denied.

Dated: April 22, 2022
      New York, New York

                                     EMERY CELLI BRINCKERHOFF ABADY
                                     WARD & MAAZEL LLP

                                     By:             /s/           
                                             Richard D. Emery
                                             O. Andrew F. Wilson
                                           David Berman
                                           600 Fifth Avenue, 10th Floor
                                           New York, NY 10020
                                           (212) 763-5000

                                     *Attorneys for Intervenors*