**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE APPLICATION OF ZOUZAR BOUKA;          ) <br> VISION INDIAN OCEAN S.A.;                 ) <br> AND VIMA REAL ESTATE S.A.R.L.         ) <br> FOR AN ORDER DIRECTING DISCOVERY FROM  ) <br> SYMBION POWER SERVICES U.S., INC.;       ) <br> SYMBION POWER LLC;                    ) <br> SYMBION POWER HOLDINGS LLC;        ) <br> SYMBION POWER AFRICA, LLC;         ) <br> SYMBION ENERGY HOLDINGS LTD.; AND    ) <br> PAUL HINKS                           ) <br> PURSUANT TO 28 U.S.C. § 1782         ) <br> _____) | Case No. 1:22-mc-00092 RA-GWG |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF *EX PARTE* APPLICATION AND PETITION FOR AN ORDER TO CONDUCT DISCOVERY FOR USE IN A FOREIGN PROCEEDING PURSUANT TO 28 U.S.C. § 1782**

STEPTOE & JOHNSON LLP
1114 Avenue of the Americas
New York, New York 10036
Tel: (212) 506-3909
Fax: (212) 506-3950
*Attorneys for Applicants*

May 6, 2022

i

**TABLE OF CONTENTS**

I.    INTRODUCTION ............................................................................................................. 1

II.   ADDITIONAL FACTUAL BACKGROUND. .......................................................... 2

III.  THE APPLICATION SATISFIES THE STATUTORY REQUIREMENTS. .................... 4

  A.  Because Applicants Can Use Discovered Information At Mr. Hinks's Trial, They Can Put
  It To Use In The Malagasy Criminal Proceedings. ....................................................... 4

    1.  Mr. Hinks Faces A Criminal Trial—And An Interlocutory Appeal Does Not Change
    That. ........................................................................................................................ 4

    2.  The Malagasy Anti-Corruption Court's Two-Year Criminal Proceeding Regarding
    Symbion's Embezzlement is not a "Bouka-Created Sham" ..................................... 7

    3.  Mr. Bouka Has Not Renounced the PAC Proceedings .................................... 8

  B.  The Discovery is "For Use" in the French Proceeding ............................................ 9

IV.   THE DISCRETIONARY FACTORS WEIGH IN FAVOR OF GRANTING
DISCOVERY UNDER 28 U.S.C. § 1782. .................................................................. 10

V.    CONCLUSION ............................................................................................................. 12

## TABLE OF AUTHORITIES

**Cases**

*In re Accent Delight Int'l Ltd.*,
869 F.3d 121 (2d Cir. 2017)............................................................................11

*In re ALB-GOLD Teigwaren GmbH*,
No. 19-MC-1166 (MKB) (ST), 2019 WL 4140852 (E.D.N.Y. Aug. 30, 2019)........................9

*Application of Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS
Forwarding (USA), Inc.*,
747 F.3d 1262 (11th Cir. 2014) ............................................................................7

*Application of Malev Hungarian Airlines*,
964 F.2d 97 (2d Cir. 1992)................................................................................5

*Brandi-Dohrn v. IKB Deutsche Industriebank AG*,
673 F.3d 76 (2d Cir. 2012)................................................................................5

*In re Furstenberg Fin. SAS*,
No. 18-MC-44 (JGK), 2018 WL 3392882 (S.D.N.Y. July 12, 2018), *aff'd by*
785 F. App'x 882 (2d Cir. 2019) ............................................................................9

*In re Hansainvest Hanseatische Inv.-GmbH*,
364 F. Supp. 3d 243 (S.D.N.Y. 2018)........................................................9

*In re Hornbeam Corp.*,
722 F. App'x 7 (2d Cir. 2018) ............................................................................9

*Intel Corp. v. Advanced Micro Devices, Inc.*,
542 U.S. 241 (2004)............................................................................6, 10

*Mees v. Buiter*,
793 F.3d 291 (2d Cir. 2015)............................................................................6, 10, 11

**Statutes**

28 U.S.C. § 1782............................................................................ *passim*

**Rules**

Fed. Rule of Evid. 408 ............................................................................8

## I.  INTRODUCTION

Respondents' Opposition ("Opp.") focuses almost entirely on an improper attempt to litigate the merits of the foreign proceedings in Madagascar and France rather than seriously disputing that Applicants have met both the statutory requirements for discovery under Section 1782 and the factors that guide this Court's discretion. Respondents are simply wrong to assert that Mr. Hinks's interlocutory appeal of an order sustaining criminal charges against him means that his trial is no longer contemplated. Unless and until the interlocutory appeal succeeds (which is unlikely), he still faces trial. Respondents' various arguments that the Malagasy proceedings lack merit are both irrelevant to a Section 1782 proceeding and wrong. The investigating judge found sufficient basis in the charges to refer the matter for trial. Next, in an attempt to show that the prosecution is all Mr. Bouka's doing, they attach unsworn statements executed by two other investors as part of the settlement with Symbion in which they falsely deny that they had agreed to file the proceedings too. Even if relevant here, the Court should afford these self-serving and financially motivated statements no weight. Nor should the Court countenance Respondents' efforts to mislead the Court by referring to a document purporting to renounce the proceedings that was created as part of an attempt at settlement with Mr. Bouka but never authorized to be released from escrow. None of these are relevant to whether discovery can assist the Malagasy court.

For the French proceeding, Respondents' arguments are more of the same. They do not deny that Applicants have retained French counsel and sent demand letters regarding their contemplated proceeding. Instead, they assert that the fact that Respondents have successfully kept secret the exact terms and structure of their transaction with Groupe Filatex means that proceedings are too speculative. But Respondents' concealment of their unlawful deal only highlights

1

Applicants' need for those documents to formulate their pleadings and prove their case, and the appropriateness of the Application.

Finally, Respondents' claim, without any support, that the foreign proceedings are a sham to evade limits on discovery in arbitration. But, as demonstrated by the other ongoing and contemplated proceedings, this is a complex transnational dispute that involves both arbitrable and non-arbitrable claims. Whatever limits on discovery may apply to the arbitrable claims do not limit discovery that will assist non-arbitrable proceedings in foreign courts.

In short, there is a place for litigating the merits of the foreign proceedings—in the Malagasy and French courts. Respondents fail to rebut Applicants' showing that discovery is authorized and that the discretionary factors favor it. This Court should allow it to proceed.

## II.      ADDITIONAL FACTUAL BACKGROUND.

As discussed in Applicants' opening brief, this proceeding arises from Applicants' discovery that Symbion was misappropriating funds from their power plant joint venture company, SPARL, by charging millions of dollars in unauthorized purported management fees far in excess of anything to which SPARL's *gérants* had agreed. When a Symbion internal spreadsheet was sent to the other *gérants* of SPARL, causing them to discover the theft, they filed a criminal complaint and separately pursued arbitration remedies under a Shareholders' Agreement for SPARL's majority shareholder, a different joint venture company called SMML.

Contrary to Respondents' assertion that Mr. Bouka filed the criminal complaint for SPARL against Mr. Hinks without authorization, the documentary evidence is conclusive that SPARL's other *gérants* authorized it. On March 2, 2020, Alexander Oppenheim instructed Mr. Bouka to file a criminal complaint on behalf of SPARL for Symbion's embezzlement of funds. In an email exchange copying Mr. Eytan Stibbe (SPARL's only other *gérant* apart from Mr. Hinks), Dean

Oppenheim (SPARL's Chief Financial Officer), and PricewaterhouseCoopers (SPARL's auditors), Mr. Oppenheim instructed as follows:

> *Hi Zouzar,*
>
> *Please see attached the list of 59 illegal money transfers that Mirela did unlawfully from [SPARL] bank accounts in Madagascar to various Symbion entities out of the country. Total of $5.75M USD.*
>
> *It was all done against improper and fabricated Symbion "invoices" and against Company Shareholders agreement, Company bylaws and Madagascar laws, while Mirela is acting like the long arm of the minor shareholder Symbion (Paul Hinx [sic]), putting its interests above all. By doing that- she acted against the interest of the Company, increasing Company debt to suppliers, not paying taxes and bringing the Company to verge of bankruptcy.*
>
> *Please start to <u>prepare the criminal complaint on behalf of the Company</u> against Mirela.*

Supplemental Declaration of Zouzar Bouka, Ex. 1 (emphasis added). On March 3, 2020, SPARL accordingly filed its complaint before the PAC against Mirela Comaniciu and Paul Hinks for misuse of corporate assets. ECF Doc. 3-10.

Messrs. Oppenheim and Stibbe's entities settled with Symbion around October/November 2021. ECF Doc. 3, ¶ 18. The unsworn statement from Messrs. Oppenheim and Stibbe denying that they authorized the criminal complaint is dated precisely at the time that settlement was being concluded. *Compare* ECF Doc. 22-4 (signed statements dated 18 October 2021) *with* ECF Doc. 3, ¶ 18 (notification of settlement on 3 November 2021).

Respondents also point to an unfiled letter purporting to withdraw the Malagasy criminal proceeding that was prepared as part of settlement negotiations and which Mr. Hinks' counsel admitted was unintentionally sent to him. The circumstances regarding that unfiled letter are discussed at length in Applicants' prior letter to the Court and the accompanying Supplemental Banks Declaration confirming that the letter was not filed and that the proceeding continues. ECF Doc. 14-3.

After Symbion settled with Messrs. Oppenheim and Stibbe's entities (and after settlement negotiations with Mr. Bouka did not resolve this dispute), Symbion purported to sell either the plant or one or both of the joint venture companies that owned it to Groupe Filatex. While Symbion has thus far successfully concealed the exact structure and terms of the transaction, it could be legally valid without the approval of SPARL's *gérants* and intends to bring proceedings to challenge the transaction in France, where Mr. Bouka has hired counsel and sent demand letters to parties involved in the transaction. ECF Doc. 3, ¶ 26.

## III.   THE APPLICATION SATISFIES THE STATUTORY REQUIREMENTS.

Respondents dispute only one of the statutory requirements for Section 1782 assistance: whether the discovery sought is "for use in a proceeding before a foreign or international tribunal." Opp. at 11. It is. In Madagascar, Respondents' assertions that the criminal charges against Mr. Hinks are meritless are irrelevant to a Section 1782 application, which is not the place to be litigating the merits of the foreign proceedings. In any event, an investigating judge upheld charges against Mr. Hinks and set them down for trial; while Respondents point to an *interlocutory* appeal of that decision, they cannot dispute that there will be a trial if that appeal fails. And in France, Mr. Bouka has done precisely what courts in this district have held is enough to show objective indicia that he intends to pursue the proceedings; the fact that he needs Section 1782 assistance to identify the precise nature of the Symbion-Filatex transaction so he can frame his pleadings and prove his case is a reason to grant discovery, not to deny it.

### A.   Because Applicants Can Use Discovered Information At Mr. Hinks's Trial, They Can Put It To Use In The Malagasy Criminal Proceedings.

#### 1.   Mr. Hinks Faces A Criminal Trial—And An Interlocutory Appeal Does Not Change That.

Respondents falsely allege that Applicants "ha[ve] no means of injecting evidence" into the PAC Proceedings and therefore are not entitled to discovery under 28 U.S.C. § 1782 unless

and until the Court of Cassation affirms the judgment sustaining the charges against Mr. Hinks and referring the case for a full trial before the PAC's Correctional Tribunal. Opp. at 12. To recite that argument is to refute it, because it admits that *as things stand*, Mr. Hinks faces a trial at which factual evidence matters. Mr. Hinks may *hope* that his interlocutory appeal succeeds, but that is not the way things stand now.

*First*, as Malagasy counsel has testified in these proceedings, SPARL is entitled to submit additional evidence in the PAC Proceedings in its capacity as a "*partie civile*." ECF Doc. 4, ¶ 6. As a *gérant* of SPARL, Applicant Mr. Bouka thus has the right and the ability to introduce evidence and to be heard during proceedings. *Id.* Respondents fail to provide any evidence to refute this elementary provision of Malagasy procedural law.

An interlocutory appeal changes none of this. The Second Circuit has allowed Section 1782 assistance while even an appeal from a final judgment is pending, where the applicant showed that "there are circumstances under which the Oberlandesgericht could hear new evidence--regardless of how narrow those circumstances might be." *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 83 (2d Cir. 2012). That logic is even stronger when it comes to an *interlocutory* appeal, where, as it stands, a trial is set to happen; it is Mr. Hinks who must convince the Court of Cassation to intervene and change that. Notably, the Second Circuit has dealt with at least one case in which an interlocutory appeal was pending and *reversed* a denial of Section 1782 assistance. *Application of Malev Hungarian Airlines*, 964 F.2d 97, 102 (2d Cir. 1992) (finding denial of application was abuse of discretion and noting that court would have discretion whether or not to pause discovery during an interlocutory appeal). Speculating that an interlocutory appeal will result in a reversal, much like speculating that a claim may be dismissed or summary judgment

granted at the trial court level, does not mean that as things stands evidence could not be used. Unless and until Mr. Hinks's interlocutory appeal succeeds, a trial is still looming.

*Second*, Respondents' argument that this Court cannot order discovery unless the PAC Proceedings have been remanded to trial before the Correctional Court has no basis in law—and indeed, Respondents cite to no case law in support of their position. The Second Circuit has held that "requiring an applicant to wait until the stage in the foreign proceeding at which the materials are to be used before applying for discovery under § 1782—which might entail multiple, separate applications—would be contrary to the statute's aim of providing efficient means of assistance to participants in international litigation. *Mees v. Buiter*, 793 F.3d 291, 300 (2d Cir. 2015) (internal quotation marks omitted). All that is necessary is that the remand for trial before the Correctional Court be in "reasonable contemplation" at the time of the application. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 259 (2004).

Here, it is highly likely that the PAC Proceedings *will* be remanded to the PAC Criminal Court for a full trial against Mr. Hinks and Ms. Comaniciu. The PAC First Instance Judge already has ordered that Mr. Hinks "be referred to the Correctional Tribunal of the Anti-Corruption Division of Antananarivo to be judged in accordance with the law." Ex. 9. Mr. Hinks already has filed and lost his first appeal of the PAC Judgment before the Court of Appeals. Banks Dec., ¶ 15. In the course of Mr. Hinks's appeal, during which he was represented by counsel, the Court of Appeals conducted a thorough review of the case file that was put before the First Instance Judge. *Id.* It not only affirmed the PAC Judgment against Mr. Hinks and ordered that he be referred to the Correctional Tribunal for judgment, but is also reinstated the charges against Ms. Comaniciu and referred her to the Correctional Tribunal as well. ECF Doc. 4, ¶ 15. Respondents have failed to show any facts that would give reason to believe that the Court of Cassation will find otherwise,

and a Section 1782 proceeding is not the proper place to be handicapping appellate prospects in Madagascar in any event.

> 2.  The Malagasy Anti-Corruption Court's Two-Year Criminal Proceeding Regarding Symbion's Embezzlement is not a "Bouka-Created Sham"

Respondents' remaining argument regarding the Malagasy proceedings—that they lack merit—is both baseless and irrelevant. It is irrelevant because a Section 1782 court is "in no position to assess the merits of" foreign litigation. *Application of Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.*, 747 F.3d 1262, 1274 (11th Cir. 2014). A summary application for discovery in aid of foreign proceedings is not a mini-trial.

Regardless, Respondents' allegations founder upon the fact that the Malagasy court itself has found the criminal complaint to have sufficient merit to refer it for trial. As for Respondents' assertions that the proceedings are contrived, the documents leave no doubt that SPARL's *gérants*, who also constituted a supermajority of SMML, reached a collective decision to file a criminal complaint to the PAC for Symbion's embezzlement of funds from SPARL. Indeed, it was Mr. Alexander Oppenheim who requested that Mr. Bouka prepare the criminal complaint "on behalf of the company" for the "59 illegal money transfers" that Ms. Comaniciu effected, acting "like the long arm of the minor shareholder Symbion (Paul Hinx [sic])." Bouka Supplemental Dec., Ex. 1. Mr. Eytan Stibbe knew of and acquiesced to this request. *See id.* Thus, contrary to Respondents' claim, Mr. Bouka did not "commence the criminal proceeding without authority," nor was it his unilateral decision to file a criminal complaint on behalf of the Plant. Opp. at 13. While it now appears that Respondents have persuaded Messrs. Oppenheimer and Stibbe to deny that they did this in a statement dated while Symbion was settling with their entities, presumably as a part of their settlement deal, ECF Doc. 22-4, a denial bought as part of a settlement does not change what actually happened.

In any event, whether or not Messrs. Oppenheim and Stibbe wish to "renounce" the PAC Proceedings is irrelevant. Respondents have introduced no evidence that either of them has the power to withdraw the proceeding or terminate Mr. Bouka's ability to present evidence on behalf of SPARL, the company of which he is a *gérant*.[1] Indeed, as a matter of corporate law, Messrs. Oppenheim and Stibbe would have an obvious disqualifying conflict of interest if they were to purport to renounce SPARL's status as a *partie civile* in return for payments to *themselves but not to SPARL* pursuant to a settlement agreement. Meanwhile, the lawyer involved in the proceeding has confirmed that Mr. Bouka is able to present evidence as a *gérant* of SPARL. ECF Doc. 4.

3.      Mr. Bouka Has Not Renounced the PAC Proceedings

Respondents further attempt to mislead this Court by claiming that Mr. Bouka has "explicitly renounced" the PAC Proceedings. Respondents present a document (the "Marovasa Letter," ECF Doc. 11-1) to this Court, which they argue is proof of Mr. Bouka's renunciation. As Applicants have already demonstrated to this Court in their letter dated April, 1 2022, the Marovasa Letter: (1) was created for leverage by Mr. Hinks in connection with an unrelated dispute; (2) has no legal effect, as it was held in escrow pending the satisfaction of certain confidentially negotiated settlement conditions which were not achieved; and (3) was acknowledged by Mr. Hinks's counsel as having been transmitted to it in error. ECF Doc. 14. Even if the merits were relevant to a Section 1782 application—and they are not—a person's consideration whether to withdraw a proceeding pursuant to a potential settlement does not imply that the proceeding lacked merit. That is, after all, why Rule 408 of the Federal Rules of Evidence exists.

---

[1] Notably, Respondents appear at times to confuse SPARL and SMML. SPARL, of which VIO is undisputedly a shareholder and Mr. Bouka a gérant with all the authority that entails under Malagasy corporate law, is the *partie civile*.

### B.      The Discovery is "For Use" in the French Proceeding

Respondents' next argument—that the French proceeding is not within reasonable contemplation—similarly falls flat. (Opp. at 15.) In this Circuit, "[p]recedent does not demand that the foreign proceeding be 'pending' or 'imminent'; rather, a § 1782 applicant must present to the district court some concrete basis from which it can determine that the contemplated proceeding is more than just a twinkle in counsel's eye." *In re Hornbeam Corp.*, 722 F. App'x 7, 9 (2d Cir. 2018) (internal quotation marks omitted). Such concrete indicia can include "hiring [foreign] litigation counsel," "sending a detailed demand letter," and the client's declaration that it intends to initiate proceedings. *In re Hansainvest Hanseatische Inv.-GmbH*, 364 F. Supp. 3d 243, 249 (S.D.N.Y. 2018); *see also In re Furstenberg Fin. SAS*, No. 18-MC-44 (JGK), 2018 WL 3392882, at \*4 (S.D.N.Y. July 12, 2018), *aff'd by* 785 F. App'x 882 (2d Cir. 2019) (declaration of intent to initiate proceeding sufficient).[2] Those are, of course, precisely what Applicants pointed to in Messrs. Malan and Bouka's declarations: they hired French litigation counsel, sent demand letters, analyzed the jurisdictional basis for challenging the Symbion-Filatex transaction in France, and Mr. Bouka has specifically affirmed his intent to file litigation to challenge the transaction. Unlike the cases Respondents cite—and contrary to their misstatement of Mr. Bouka's declaration— Applicants are not merely investigating *whether* to file suit but Mr. Bouka has specifically said that as things stand he intends to do so.

What Respondents argue instead is that because they have managed to keep the terms of their deal secret such that Mr. Bouka needs Section 1782 discovery to frame his French pleadings

---

[2] Indeed, courts in this circuit have found a proceeding to be in reasonable contemplation even when foreign litigation counsel has *not* yet been retained. *See, e.g.*, *In re ALB-GOLD Teigwaren GmbH*, No. 19-MC-1166 (MKB) (ST), 2019 WL 4140852, at \*9 (E.D.N.Y. Aug. 30, 2019).

and submit the evidence he needs—since France does not have U.S.-style discovery—he cannot get it. Opp. at 16. But that is *precisely* why Section 1782 permits discovery in aid of a contemplated proceeding, since many countries do not allow the file-first-and-discovery-later approach common in the United States. *Cf. Mees*, 793 F.3d at 298, 302 ("for use" requirement satisfied if evidence would help *either* plead *or* prove anticipated claims, and noting that "[f]ew if any foreign jurisdictions permit the scope of discovery available in our courts"). Respondents' Catch-22 rule—that discovery is unavailable precisely when it is necessary to identify exactly how to frame foreign litigation—is contrary to Second Circuit precedent and should be rejected.

## IV.   THE DISCRETIONARY FACTORS WEIGH IN FAVOR OF GRANTING DISCOVERY UNDER 28 U.S.C. § 1782.

Respondents barely address most of the discretionary factors under *Intel*, another tacit recognition that they weigh heavily in favor of discovery. He does not contest that most of the Respondents are not participants in the foreign proceedings, or, in the case of Mr. Hinks, refused to participate in the criminal proceedings before the investigating judge and is outside the jurisdiction in any event. *Intel Corp.*, 542 U.S. at 264. They do not provide any proof, let alone authoritative proof, that Madagascar or France would reject evidence derived from this application or that it would deeply offend their public policy.

Instead, their sole articulated argument is that this application is contrived to avoid limits on discovery in a pending arbitration. As Applicants noted in their application, they have another dispute with certain of Respondents that is pending in an international arbitration tribunal. Respondents contend (without citation to authority) that the existence of this proceeding means that seeking discovery in aid of pending and contemplated proceedings in Madagascar and France is a circumvention of the arbitrator's authority or the restrictive arbitration discovery rules. Opp. at 20-21. But that is irrelevant. The parties agreed to arbitrate some claims, and under current

Second Circuit precedent, that means that they cannot receive Section 1782 assistance for the claims before the arbitrator. No-one disputes that.

But that has no bearing whatsoever on other claims that *are* eligible for Section 1782 assistance, much as in *Accent Delight* the Second Circuit held that the existence of (ineligible) domestic proceedings did not prevent discovery for use in foreign proceedings. *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 135 (2d Cir. 2017). Tellingly, Respondents point to no evidence of the foreign proceedings being a "ruse," *id.*—they simply assert that an arbitrator denied discovery under the standards applicable under the arbitration rules, and treat that as enough. Applicants here have presented ample evidence that that there are good faith foreign proceedings pending and contemplated; Respondents point to no evidence to the contrary.

Respondents also posit that discovery may be available in the French proceeding itself. They do not even attempt to show the extent of discovery available in France, but in any event, it is beside the point. The Second Circuit has cautioned against district courts speculating what may or may not be discoverable under foreign law and has stated that "inquiry into foreign procedure" is "best minimized for § 1782 applications." *Mees*, 793 F.3d at 304.

Finally—and rather in tension with their argument that this proceeding is designed to evade limits on discovery in arbitration—Respondents contend that Applicants have already obtained the documents they seek in the ICDR Arbitration, and that it is unduly burdensome for Respondents produce these documents for a second time. Opp. at 19. That is simply wrong—discovery in the ICDR Arbitration concluded on October 1, 2021; the unlawful sale of the Plant to Groupe Filatex was only publicly disclosed on February 9, 2022. Bouka Decl. ¶ 22. The discovery that Applicants seek with respect to that sale—including any agreements between Symbion and Alpha or Symbion and Groupe Filatex that bear upon VIO's allegations that Groupe Filatex aided and abetted

11

Symbion's efforts to ignore VIO's interests and rights, information regarding actual or potential sale transactions that violate VIO's rights, and information specifically regarding the Groupe Filatex sale—did not form part of the document production process in the ICDR Arbitration. But in any event, to the extent that overlap does exist, that makes the burden *less*, not more, since they already have those documents gathered; for any such documents that they have already produced subject to any confidentiality orders in the arbitration, Respondents need only write a letter deeming the documents reproduced in this proceeding.

## V.    CONCLUSION

For the reasons stated above, Applicants respectfully request that this Court grant their application for discovery in aid of foreign proceedings under 28 U.S.C. § 1782.

Dated: May 6, 2022                          Respectfully submitted,


                                            /s/ Robert W. Mockler
                                            Robert W. Mockler
                                            rmockler@steptoe.com
                                            STEPTOE & JOHNSON LLP
                                            1114 Avenue of the Americas
                                            New York, New York 10036-7703
                                            Telephone:    212 506 3900
                                            Facsimile:    212 506 3950