UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
IN RE: APPLICATION OF ZOUZAR BOUKA;   :
VISION INDIAN OCEAN S.A.; AND VIMA             OPINION and ORDER
REAL ESTATE S.A.R.L. FOR AN ORDER TO  :
CONDUCT DISCOVERY FOR USE IN            22 Misc. 92 (RA) (GWG)
FOREIGN PROCEEDINGS                 :
------------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, United States Magistrate Judge**

Zouzar Bouka, together with Vision Indian Ocean S.A. ("VIO") and VIMA Real Estate

S.A.R.L. ("VIMA"), have applied pursuant to 28 U.S.C. § 1782 for an order authorizing six

document subpoenas and six deposition subpoenas on several corporate entities affiliated with

Symbion Power Holdings LLC ("Symbion"), as well as its Chief Executive Officer, Paul Hinks.[1]

For the following reasons, the application is granted in part and denied in part.[2]

---

[1] Ex Parte Motion for Discovery Pursuant to 28 U.S.C. § 1782, filed Mar. 24, 2022
(Docket # 1) ("App."); Exhibits 1-12 to App., filed Mar. 24, 2022 (Docket ## 1-1 through 1-12)
("Proposed Subpoenas"); Memorandum of Law in Support of Ex Parte Motion, filed Mar. 24,
2022 (Docket # 2) ("App. Mem."); Declaration of Zouzar Bouka in Support, filed Mar. 24, 2022
(Docket # 3) ("Bouka Decl."); Declaration of Frederika Banks Andrianzanatany in Support, filed
Mar. 24, 2022 (Docket # 4) ("Banks Decl."); Declaration of Alexandre Malan in Support, filed
Mar. 24, 2022 (Docket # 5) ("Malan Decl."); Declaration of Kimberly Gulino in Support, filed
Mar. 24, 2022 (Docket # 6)); Declaration of Paul Hinks in Opposition, filed Apr. 22, 2022
(Docket # 22) ("Hinks Decl."); Memorandum of Law in Opposition, filed Apr. 22, 2022 (Docket
# 23) ("Opp. Mem."); Reply Memorandum in Support, filed May 6, 2022 (Docket # 24) ("App.
Reply"); Supplemental Declaration of Zouzar Bouka, filed May 6, 2022 (Docket # 25); Letter
from Richard D. Emery, filed May 9, 2022 (Docket # 26); Letter from Robert W. Mockler, filed
May 11, 2022 (Docket # 27); Letter from Robert W. Mockler, filed June 26, 2022 (Docket # 28)
("App. Supp. Ltr."); Letter from Richard D. Emery, filed June 30, 2022 (Docket # 30) ("Opp.
Supp. Ltr."); Letter from Richard D. Emery, filed Aug. 31, 2022 (Docket # 38) ("Opp. Aug. 31
Ltr."); Letter from Robert W. Mockler, filed Sept. 10, 2022 (Docket # 39) ("App. Sept. 10 Ltr.").

[2] An application under 28 U.S.C. § 1782 may be decided by a Magistrate Judge under 28
U.S.C. § 636(b) inasmuch as it is a non-dispositive motion. See In re Hulley Enterprises, Ltd.,
358 F. Supp. 3d 331, 340-42 (S.D.N.Y. 2019).

I. <u>BACKGROUND</u>

A. <u>Facts</u>

The applicants VIO and VIMA are two corporations operating in Madagascar, founded and chaired by applicant Bouka, a citizen of France, <u>see</u> Bouka Decl. ¶¶ 1-2, whom we will refer to collectively as "Bouka" or the "Applicants."  VIO is a minority shareholder of Symbion Power Mandroseza S.A.R.L. ("SPARL"), a Malagasy energy company, and Symbion Mandroseza Mauritius Limited ("SMML"), a holding company for shares in SPARL.  <u>See</u> <u>id.</u> ¶¶ 3-4.  Bouka is also a "gérant," a title "akin to being a director and officer," of SPARL.  <u>Id.</u> ¶ 3. In this application, Bouka seeks a deposition and documents from Symbion, several subsidiaries, and its CEO, Paul Hinks.  <u>See</u> Proposed Subpoenas; App. Mem. at 11.[4]

The interaction among these parties arises from the operation and eventual sale of the Mandroseza power plant in Madagascar.  <u>See</u> Bouka Decl.; App. Mem.  In 2015, Symbion, through its subsidiary SPARL, contracted with the government of Madagascar to operate the Mandroseza plant.  <u>See</u> Hinks Decl. ¶ 5; Bouka Decl. ¶ 7.  As part of Symbion's work on the Mandroseza plant, Symbion contracted with Bouka to act as a liaison with Madagascar officials, with Bouka receiving a $1,200,000 "success fee" once the plant became operational.  Hinks Decl. ¶¶ 7-8.  Symbion's agreement with Bouka, which Bouka refers to as a "Shareholders' Agreement,"  provided that Bouka was to receive a 5% interest in SMML.  <u>See</u> <u>id.</u> ¶ 8; Bouka Decl. ¶¶ 9-10.  Symbion also entered into agreements with Alpha Innovations Management, Ltd. ("Alpha") to assist with financing the Mandroseza project.  <u>See</u> Hinks Decl. ¶ 11.

---

[4]  The four subsidiaries are Symbion Power Services U.S., Inc., Symbion Power LLC, Symbion Power Africa, LLC, and Symbion Energy Holdings Ltd.  <u>See</u> App. at 1.

A dispute arose between Symbion, Bouka, and Alpha regarding the Mandroseza project, with Bouka alleging that Symbion fraudulently appropriated funds from the Mandroseza plant and wrongfully refused to transfer to Bouka the 5% interest in SMML.  Id. ¶¶ 8-9; Bouka Decl. ¶¶ 4, 11-14.  Symbion initiated an International Centre for Dispute Resolution ("ICDR") arbitration among the parties.  See Hinks Decl. ¶ 14; Bouka Decl. ¶ 4.  The arbitration is being held in New York City and was ongoing as of April 2022.  See Hinks Decl. ¶¶ 14, 28.  Symbion and Alpha eventually settled their claims against one another.  Id. ¶ 18.  Bouka attempted to obtain information regarding the settlement agreement through the arbitration's discovery procedures, but the arbitrator denied his request.  Id. ¶¶ 23-27.

On March 3, 2020, Bouka, purportedly acting in his capacity as a gérant of SPARL, directed an attorney to initiate a criminal complaint in Madagascar against Hinks, alleging that funds had been misappropriated from SPARL by Hinks and Symbion.  See Banks Decl. ¶¶ 4-5. Because the complaint alleged corruption-related crimes, it was referred to the "Pôle Anticorruption," a division of Madagascar's judiciary designated to handle corruption matters. See id. ¶¶ 6-8.  On June 30, 2021, a Malagasy judge issued an order finding that there was sufficient evidence to permit the criminal complaint to move forward against Hinks.  See id. ¶ 13; Anti-Corruption Division Order for Partial Dismissal, annexed as Ex. 2 to Banks Decl. Hinks appealed this decision, which was affirmed by an intermediate appellate court.  See Banks Decl. ¶ 15.  Hinks then appealed to the Malagasy Court of Cassation, which rejected the appeal, thereby ending Hinks' effort to obtain a dismissal of the complaint before the criminal trial begins.  See Order of Court of Cassation, dated June 7, 2022, annexed as Ex. 2 to App. Supp. Ltr.; Banks Decl. ¶¶ 16-17.  Malagasy criminal procedure rules permit Bouka, through SPARL, to participate in the criminal proceedings as a civil party.  See Banks Decl. ¶¶ 6-7, 18.  As a civil

party, SPARL will have the ability to submit evidence to the criminal court and may recover damages for any harms suffered by SPARL that are established by the criminal investigation and prosecution.  See id. ¶¶ 6, 17-19.

In February 2022, it was announced that Symbion had sold its interests in the Mandroseza plant to Groupe Filatex, a Malagasy corporation.  See Bouka Decl. ¶ 22; Malan Decl. ¶¶ 4-6; Press Release, dated Feb. 7, 2022, annexed as Ex. 2 to Malan Decl.  Bouka asserts that this sale occurred without providing him notice or obtaining his consent, in violation of his rights as a shareholder under Malagasy corporate law.  See Malan Decl. ¶¶ 8-15.  As is discussed further below, Bouka has considered taking legal action in France regarding the Groupe Filatex acquisition of the Mandroseza plant.

B. The Instant Application

Bouka filed the instant application for discovery, consisting of subpoenas for documents and depositions of Hinks and the five Symbion entities, pursuant to 28 U.S.C. § 1782 on March 24, 2022.  See App.  Bouka represents that Madagascar's Pôle Anticorruption "has issued the equivalent of an indictment charging Hinks with using his position as a gérant of SPARL in bad faith and contrary to the interests of SPARL to favor Symbion by transferring approximately $5 million of the Plant's funds."  See id. at 2-3.  Bouka seeks "records of funds transfers directly or indirectly to any Symbion Group entity or their principals," for introduction into evidence as a civil party to this prosecution.  Id. at 3; see also Banks Decl. ¶¶ 6, 18.  With respect to the contemplated French proceedings, Bouka seeks agreements between Symbion, Groupe Filatex, and Alpha regarding the sale of the Mandroseza plant to Groupe Filatex.  See App. Mem. at 3.  Bouka contends that these agreements will show violations of the shareholder agreements and charters governing SMML and/or SPARL.  See id. at 9-11.

4

On March 28, 2022, Hinks and the Symbion entities (together, "respondents") filed a

letter motion seeking leave to intervene to oppose Bouka's section 1782 application. <u>See</u> Letter

from Richard D. Emery, filed Mar. 28, 2022 (Docket # 11).  That motion was granted.  <u>See</u>

Order, dated Apr. 12, 2022 (Docket # 16).   Briefing on the instant application followed.

II. <u>LEGAL STANDARD</u>

"In ruling on an application made pursuant to section 1782, a district court must first

consider the statutory requirements and then use its discretion in balancing a number of factors."

<u>Brandi-Dohrn v. IKB Deutsche Industriebank AG</u>, 673 F.3d 76, 80 (2d Cir. 2012).  As a

threshold matter, an application for discovery under section 1782 must meet the following

requirements: "(1) the person from whom discovery is sought resides (or is found) in the district

of the district court to which the application is made, (2) the discovery is for use in a foreign

proceeding before a foreign tribunal, and (3) the application is made by a foreign or international

tribunal or any interested person." <u>Id.</u>; <u>accord</u> 28 U.S.C. § 1782(a).

Section 1782 "authorizes, but does not require, a federal district court to provide judicial

assistance to foreign or international tribunals or to 'interested person[s]' in proceedings abroad."

<u>Intel Corp. v. Advanced Micro Devices, Inc.</u>, 542 U.S. 241, 247 (2004).  Once section 1782(a)'s

minimum requirements are met, "a district court is free to grant discovery in its discretion."  <u>In re</u>

<u>Application for an Order Permitting Metallgesellschaft AG to take Discovery</u>, 121 F.3d 77, 78

(2d Cir. 1997) (internal citation omitted).  In <u>Intel</u>, the Supreme Court articulated four factors

that courts may consider in exercising that discretion: (1) whether "the person from whom

discovery is sought is a participant in the foreign proceeding"; (2) "the nature of the foreign

tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign

government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) "whether

the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the request is "unduly intrusive or burdensome." Intel, 542 U.S. at 264-65. "The Intel factors are not to be applied mechanically. A district court should also take into account any other pertinent issues arising from the facts of the particular dispute." Kiobel by Samkalden v. Cravath, Swaine & Moore LLP, 895 F.3d 238, 245 (2d Cir. 2018). "[D]istrict courts must exercise their discretion under § 1782 in light of the twin aims of the statute: providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." In re Metallgesellschaft, 121 F.3d at 79 (punctuation omitted).

III. DISCUSSION

Respondents do not contest that the individuals and entities "from whom discovery is sought" reside or are found in this district. See Opp. Mem. at 11. Nor do they argue that the application has not been made by "any interested person." See id. In any event, the Court finds that these two statutory requirements are met here. Hinks resides in New York and the Symbion Group entities have their principal place of business in New York. See App. Mem. at 13. Also, as is explained further below, Bouka, through SPARL, is the complainant and civil party in the Madagascar criminal court proceeding and a would-be plaintiff in the contemplated French action. Accordingly, respondents' only argument that the statutory requirements of section 1782 are not met is that the requested discovery is not "for use" in the two foreign proceedings applicants identify. See Opp. Mem. at 12-17. Separately, respondents argue that the Court should exercise its discretion to deny the application even if we find that the statutory requirements are met. See id. at 17-21.

6

A.  Section 1782's "For Use" Requirement

Respondents argue that the application does not satisfy the requirement that the requested discovery be "for use" in a foreign proceeding.  See id. at 12-17.  With regard to the Madagascar proceeding, respondents argue that "Bouka cannot use the documents he seeks . . . because (1) he cannot submit evidence in that tribunal; and (2) the complaint he filed is a sham."  Id. at 12.  As to the potential French action, respondents argue that the lawsuit is not "within reasonable contemplation," or "sufficiently determinate to be a basis for § 1782 discovery."  Id. at 15.

"By adopting the phrase 'for use,' Congress plainly meant to require that § 1782 applicants show that the evidence sought is 'something that will be employed with some advantage or serve some use in the proceeding.'"  Certain Funds, Accts. &/or Inv. Vehicles v. KPMG, L.L.P., 798 F.3d 113, 120 (2d Cir. 2015) (quoting Mees v. Buiter, 793 F.3d 291, 297 (2d Cir. 2015)).  "The key question, therefore, is not simply whether the information sought is relevant, but whether the [applicant] will actually be able to use the information in the proceeding."  Id.  A party need not have "formal 'party' or 'litigant' status," where it nevertheless possesses "significant procedural rights," such as the ability to "submit . . . information in support of its allegations, and . . . seek judicial review."  Intel, 542 U.S. at 255.

We consider the ongoing Madagascar criminal proceeding and the contemplated French civil action separately.

1.  Madagascar Criminal Proceeding

First, SPARL's role as a civil party to the criminal prosecution of Hinks satisfies the "for use" requirement of section 1782.  Although courts have not considered Madagascar's combined civil-criminal procedures specifically, other comparable regimes have been the subject of successful section 1782 applications.  For example, the Second Circuit held that an application

by a civil party to criminal proceedings in France and Monaco satisfied the "for use" element of

the section 1782 analysis. See In re Accent Delight Int'l Ltd., 869 F.3d 121, 124-27 (2d Cir.

2017). Relatedly, in In re Application for an Order Pursuant to 28 U.S.C. 1782 to Conduct

Discovery for Use in Foreign Proceedings, 773 F.3d 456 (2d Cir. 2014), the Second Circuit

granted a section 1782 application by a Swiss criminal complainant, who sought documents for

the purpose of providing them to an investigating magistrate who was overseeing a criminal

inquiry. See id. at 457. The court held that "[t]he Swiss criminal investigation in the instant case

is exactly the type of proceeding that the [statute is] intended to reach," and held "that 28 U.S.C.

§ 1782 permits district courts to order the production of discovery for use in a foreign criminal

investigation being conducted by an investigating magistrate." Id. at 461-62. SPARL is situated

similarly to the applicants in Accent Delight and In re Application, as it possesses the right as a

civil party and alleged fraud victim to submit evidence to the Malagasy criminal court. See

Banks Decl. ¶¶ 6, 18. The respondents have not contested that Madagascar's criminal

procedures permit a civil party such as SPARL to introduce evidence as part of a criminal case.

Respondents argue that the Madagascar criminal proceeding is a "Bouka-[c]reated

[s]ham." See Opp. Mem. at 13. Respondents offer numerous arguments as to why the

proceeding is flawed on the merits. Id. at 13-14; Opp. Supp. Ltr. at 1-3. However, "[a] district

court's focus in considering a request under § 1782 is not on the merits of the proposed claim,

but on the movant's 'practical ability to inject the requested information into a foreign

proceeding.'" IJK Palm LLC v. Anholt Services USA, Inc., 33 F.4th 669, 680 (2d Cir. 2022)

(quoting Accent Delight, 869 F.3d at 132); accord Application of Consorcio Ecuatoriano de

Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc., 747 F.3d 1262, 1274 (11th Cir. 2014)

("Like the district court, we are in no position to assess the merits of [the parties' foreign

litigation].").  Thus, we decline to probe the validity of the Madagascar criminal proceeding —

whether on the substance of the charges or on the issue of whether Bouka was authorized to

initiate it.  See Opp. Mem. at 13-14.  What matters is whether the proceeding was in fact

instituted and whether it is in fact receptive to evidence.  Neither of these points has been

contested by the respondents.

For similar reasons, we reject the argument that it matters whether Bouka signed a

document withdrawing that proceeding.  See Opp. Mem. at 2, 13-14.  The respondents supply no

evidence that this document has any legal effect on the pendency of the Madagascar proceeding

or, more to the point, that it would affect the Madagascar court's ability to receive evidence

obtained by Bouka.[6]

Respondents' only remaining argument that Bouka's application does not meet the "for

use" requirement of section 1782 is that the proceeding does not comport with notions of due

process in light of alleged corruption in Madagascar's judicial system.  See Opp. Supp. Ltr. at 2-

3.  However, the decisions respondents cite in support of this argument construe this as a

discretionary consideration, not part of the statutory requirements for a section 1782 application.

See United States v. Sealed 1, Letter of Request for Legal Assistance from the Deputy

Prosecutor Gen. of the Russian Fed'n, 235 F.3d 1200, 1206 (9th Cir. 2000) (listing compatibility

with domestic notions of propriety as a "factor[] that district courts may consider"); John Deere

Ltd. v. Sperry Corp., 754 F.2d 132, 136 n.3 (3d Cir. 1985) (reviewing legislative history

regarding the court's "discretionary power" and concluding that it "would seem to authorize

---

[6]  The respondents originally argued that the request for discovery cannot be "for use" in
the Madagascar criminal case because of Hinks' pending appeal, see Opp. Mem. at 12-13, but
that appeal has since been denied and the matter has been remanded for trial, see Order of Court
of Cassation.

district courts to scrutinize the underlying fairness of foreign proceedings to ensure they comply

with notions of due process."); see also In re Republic of Ecuador, 2011 WL 736868, at *9 (N.D.

Cal. Feb. 22, 2011) (evaluating these considerations as part of the discretionary factors) (citing

Sealed 1, 235 F.3d at 1205) .  Thus, we will address this issue when considering those factors.

     In sum, the evidence which Bouka seeks for admission by SPARL as a civil party in the

Madagascar criminal trial meets the minimum requirements of section 1782.

     2.  French Civil Proceeding

     Symbion argues that the contemplated French proceedings are "not sufficiently

determinate to be a basis for § 1782 discovery."  Opp. Mem. at 15.

     Section 1782 allows discovery "for use" in foreign proceedings.  28 U.S.C. § 1782.  Even

where a litigant has not yet commenced a foreign proceeding, discovery may still be "for use" in

that proceeding "so long as the proceeding is within reasonable contemplation." Mees, 793 F.3d

at 297; accord In re Costa Pinto, 2022 WL 4088012, at *5 (S.D.N.Y. Sept. 6, 2022).  Potential

proceedings "are not 'within reasonable contemplation'" where "the Section 1782 Application is

bereft of even the broadest contours of what the possible proceeding(s) . . . might entail."  In re

Sargeant, 278 F. Supp. 3d 814, 823 (S.D.N.Y. 2017) (citation omitted).  "The 'applicant must

have more than a subjective intent to undertake some legal action, and instead must provide

some objective indicium that the action is being contemplated."  Id. (citing Certain Funds,

Accts., and/or Inv. Vehicles v. KPMG, LLP, 798 F.3d 113, 123 (2d Cir. 2015)).  Such an

application, then, demands "some concrete basis from which [the court] can determine that the

contemplated proceeding is more than just a twinkle in counsel's eye."  KMPG, 798 F.3d at 124.

     While discovery is available under section 1782 for use in contemplated suits, discovery

is not available for a party to seek information about whether to file suit in the first place.

Sargeant, 278 F. Supp. 3d at 823.  In Sergeant, the court found the applicant's assertion that he
wanted discovery "to assess whether to initiate actions" was an indication that the contemplated
proceedings were "mere[ly] speculative[,]" rather than reasonably contemplated.  Id.  Likewise,
in In re Gulf Inv. Corp., 2020 WL 7043502 (S.D.N.Y. Nov. 30, 2020), the court found that the
applicant failed to meet the "for use" requirement where applicant requested discovery in support
of "potential claims" that the firm "ha[d] been evaluating . . . in a number of areas."  Id. at *4.
The court emphasized that the applicant "did not provide any detail as to the potential form of
litigation it intended to pursue, nor . . . legal theories under which it intended rely in such
litigation."  Id.

Thus, "[w]here materials are sought for use in a future proceeding . . . . [a]n applicant
should 'provide the legal theory supporting such a proceeding'[;] 'lay out either the content of
his claims' or 'a sufficiently concrete basis for' liability[;] and 'provide sufficiently reliable
indications of the likelihood that proceedings will be instituted within a reasonable time.'"  Ex
Parte Abdalla, 2021 WL 168469, at *3 (S.D.N.Y. Jan. 19, 2021) (citing Mangouras v. Squire
Patton Boggs, 980 F.3d 88, 101 (2d Cir. 2020)).  In Kuwait Ports Authority, the court found that
where an applicant "has retained [local] counsel, said counsel has begun preparing the necessary
pleadings for the petition[,] the Application has set forth a theory [of liability,] . . . and the
[applicant] has provided declarations expressing an intent to initiate the . . . proceedings, the
['use of'] factor is satisfied."  In re Kuwait Ports Auth., 2021 WL 5909999, at *8 (S.D.N.Y. Dec.
13, 2021).  In In re Hansainvest Hanseatische Inv.-GmbH, the court identified further indicia that
materials were sought for "reasonably contemplated" proceedings, "including hiring [foreign]
litigation counsel, retaining experts, and sending a detailed demand letter."  364 F. Supp. 3d 243,
249 (S.D.N.Y. 2018).

Here, Bouka has engaged local counsel and have instructed him to prepare pleadings. See Malan Decl. ¶ 14 (Bouka has "instructed [attorney Alexandre Malan] to pursue potential legal action in France against the Symbion Group of Companies (and/or their affiliate entities owned by Mr. Hinks), Groupe Filatex, Energiestro and/or Okan Partners relating to [Bouka, VIO, and VIMA's] interests in the Plant."); see also Bouka Decl. ¶ 26 (stating that Bouka "engaged and instructed counsel in France, Dr. Alexandre Malan, to prepare and file litigation proceedings challenging Symbion's sale of interests in the Plant to Groupe Filatex"). Bouka has identified the conduct that gives rise to the contemplated claims. See Malan Decl. ¶¶ 5-7 (detailing a sale of the Mandroseza power plant without notice to shareholders in the plant, including applicants). Bouka has also articulated the legal basis for his claims, namely that "the unlawful sale" of the Mandroseza plant "failed to comply with corporate statutory and contractual provisions for the transfer of shares, to the detriment of [applicants]." See id. ¶ 8. Bouka has detailed their theory for French courts' jurisdiction over their claims. See id. ¶¶ 17-19.

Additionally, Bouka's counsel sent Groupe Filatex a letter on December 10, 2021, identifying the Applicants' interest in the Mandroseza plant and warning that any interest Groupe Filatex acquired in the plant would be subject to Applicants' claimed interest. See Bouka Decl. ¶ 27; Letter from Juliya Arbisman, dated Dec. 10, 2021, annexed as Ex. 11 to Bouka Decl. Bouka's counsel also contacted Energiestro "to place them on notice of [the Applicants'] ownership interests in" the Mandroseza plant and "express[] concern that Energiestro" had facilitated a violation of applicants' rights. See Malan Decl. ¶ 10; Letter from Alexandre Malan, dated March 8, 2022, annexed as Ex. 4 to Malan Decl.

12

Notwithstanding these circumstances, Symbion argues that Bouka is seeking discovery to determine whether suit should be brought at all, rather than seeking it "for use" in contemplated proceedings.  Opp. Mem. at 16.  Respondents cite In re Sargeant, 278 F. Supp. 3d 814 (S.D.N.Y. 2017), for the proposition that section 1782 was not intended to aid discovery "in order to assess whether or not to file suit."  See Opp. Mem. at 15 (citing Sargeant, 278 F. Supp. 3d at 823).  Bouka does not address Sargeant in his responsive brief.  Case law consistently counsels that section 1782 discovery—while broad—should not be used to decide whether to bring suit.  See In re Kuwait Ports Auth., 2021 WL 5909999, at *8 (S.D.N.Y. Dec. 13, 2021) (noting that an application seeking to "rely upon the requested discovery 'to assess whether to initiate actions,'" would be "plainly insufficient.") (citing In re Sargeant, 278 F. Supp. at 823-24); In re Certain Funds Accts., &/or Inv. Vehicles Managed by Affiliates of Fortress Grp., LLC, 2014 WL 3404955, at *6 (S.D.N.Y. July 9, 2014), aff'd, 798 F.3d 113 (2d Cir. 2015) ("Courts must embrace Congress's desire that broad discovery be available for parties . . . while also guarding against the potential that parties may use § 172 to investigate whether litigation is possible in the first place[.]").

Here, while his retention of counsel and description of potential claims suggest Bouka's action is "reasonably contemplated," we are concerned by his statement that he "need[s] additional information about the purported sale so that [he] can authorize [counsel] to proceed with the lawsuit."  Bouka Decl. ¶ 26.  An intent by an applicant to file a lawsuit "once it obtain[s] additional information," however, is not necessarily fatal to a section 1782 application. See In re Hornbeam Corp., 722 F. App'x 7, 9 (2d Cir. 2018) ("concrete basis" was provided for §1782 application where applicant had previously brought related actions and "intended to initiate further litigation once it obtained additional information").  Case law sheds light on the

distinction between cases in which an applicant intends to file pending new information and those in which an applicant needs new information to decide whether to file at all.  In <u>In re Pilatus Bank, PLC</u>, the court denied petition from applicant who had "hired counsel and [was] discussing the possibility of bringing an action" but sought "a wide range of information . . . for purposes of determining whether to bring an action for damages, and if so, what claims might be alleged."  2021 WL 1890752, at *9 (D.N.H. May 5, 2021).  In <u>In re Lucille Holdings Pte., Ltd.,</u> the court found that a proceeding was not "reasonably contemplated" where applicant suggested causes of action but was "investigating and contemplated asserting other potential causes of action: and was "continuing [to investigate] additional claims and the appropriate jurisdiction and tribunal for asserting them."  2022 WL 1421816, at *14 (D.D.C. May 5, 2022).  By contrast, in <u>In re Team Co., Ltd.,</u> a proceeding was "within reasonable contemplation" where the applicant specified the grounds for its intended claim under foreign law and "anticipate[d] filing" once it obtained specific details regarding the defendant's identity.  2022 WL 4099219, at *3 (N.D. Cal. Sept. 7, 2022).

While it is a close question, Bouka's situation is more analogous to that in <u>Team Co.</u> Unlike in <u>Pilatus Bank</u>, Bouka has identified the particular claims that he intends to allege, and states that he is seeking more information "to frame his French pleadings" and provide evidence in that case.  App Reply. at 9.  Unlike in <u>Lucille Holdings</u>, Bouka has laid out a jurisdictional basis for his claims, and has identified the tribunal in which he intends to assert them.  <u>See</u> Malan Decl. ¶¶ 14-19.  As in <u>Team Co.</u>, Bouka seeks specific information to support his existing claims — here, the structure of the sale — rather than general grounds for suit.  <u>See</u> Bouka Decl. ¶ 26. As such, <u>Sargeant</u>'s concern that the application merely seeks fodder for a hypothetical suit is not implicated.

14

Respondents argue that Bouka's case is "far too speculative" to support a 1782 petition because Bouka "has no idea what the terms are of the transactions that he seeks to nullify." Opp. Mem. at 16. But Bouka's counsel has laid out at least one theory of liability in the French Proceedings that does not rely on these unknown details at all, and is instead based on the lack of notice to Mr. Bouka. See Malan Decl. ¶ 15 ("[T]he purported unauthorized sale of the Plant by Symbion to Groupe Filatex is unlawful . . . because it failed to comply with contractual and statutory requirements requiring advance notice to the Company, publication in the commercial registry, and respect for [Bouka's] preemption rights."). Thus, Bouka's lack of knowledge as to the precise nature of the sale does not preclude his use of section 1782.

Because Bouka has retained local counsel, laid out a basis for liability, and identified the factual basis of his claims, we find that the French Proceedings are "reasonably contemplated," and thus the requested discovery would be "for use" in a foreign proceeding.

B. Discretion

In determining whether we should exercise our discretion to grant a section 1782 application, we look to the Intel factors: (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the request is "unduly intrusive or burdensome." Intel, 542 U.S. at 264-65. We consider each factor below with respect to the two proceedings.

1.  Madagascar Criminal Proceeding against Hinks

a.  Participation in the Foreign Proceedings

The first Intel factor asks whether "the person from whom discovery is sought is a participant in the foreign proceeding" because "the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad." Intel, 542 U.S. at 264. "A foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence." Id. Accordingly, "when the real party from whom documents are sought . . . is involved in foreign proceedings, the first Intel factor counsels against granting a Section 1782 petition." Kiobel, 895 F.3d at 245 (citing Schmitz v. Bernstein Liebhard & Lifshitz, LLP., 376 F.3d 79, 85 (2d Cir. 2004)); accord In re Godfrey, 526 F. Supp. 2d 417, 419 (S.D.N.Y. 2007) (characterizing the first Intel factor as "[w]hether the documents or testimony sought are within the foreign tribunal's jurisdictional reach, and thus accessible absent § 1782 aid"); In re Microsoft Corp., 428 F. Supp. 2d 188, 194 (S.D.N.Y. 2006) (while the entities from which documents were sought were not participants in the proceeding, the documents were within the tribunal's "reach" and thus were already "available").

As respondents highlight, Hinks, the CEO of Symbion, is the defendant and thus a participant in the Madagascar criminal proceeding. See Opp. Mem. at 18; Hinks Decl. ¶ 1, 29. Symbion and its subsidiaries, which are the targets of the subpoenas, are not named as defendants in that matter, however, see App. Mem. at 8, and so this fact does not counsel against granting the application as to those entities.

The first Intel factor also calls on us to assess the ability of those jurisdictions to obtain the requested discovery. See In re Microsoft, 428 F. Supp. 2d at 193-94 (inquiring into whether the requested documents were "within the [foreign tribunal's] reach"); In re Servicio Pan

Americano de Proteccion, 354 F. Supp. 2d 269, 274 (S.D.N.Y. 2004) ("the apparent limitations

of Venezuelan discovery rules suggest that the exercise of jurisdiction by this Court may be

necessary" to obtain the requested documents). Bouka's counsel has submitted a declaration

stating that the Malagasy criminal court's "investigation is now closed," and therefore "it is not

expected that the [court] will order Mr. Hinks to provide additional discovery materials." See

Banks Decl. ¶ 20. As Bouka argues, Hinks, not the Symbion entities, is the defendant in the

criminal action, and so the Malagasy criminal court may lack "the practical ability to enforce an

order compelling production of documents in the possession and control of Symbion's New

York-based entities," which are not parties. App. Mem. at 21. Hinks also does not reside in

Madagascar, although he represents that he has retained local counsel in Madagascar and plans

to litigate the charges against him. See Opp. Mem. at 18.

In light of the apparent limitations in obtaining additional discovery in the Madagascar

criminal prosecution, the first factor weighs in favor of granting the application.

b.  The Nature of the Foreign Proceedings

The second Intel factor calls for an assessment of "the nature of the foreign tribunal, the

character of the proceedings underway abroad, and the receptivity of the foreign government or

the court or agency abroad to U.S. federal-court judicial assistance." Intel, 542 U.S. at 264.

"[A]bsent authoritative proof that a foreign tribunal would reject the evidence obtained with the

aid of section 1782, . . . a district court should not refrain from granting the assistance afforded

under the Act based simply on allegations to that effect." In re Metallgesellschaft, 121 F.3d at 80

(punctuation omitted); accord Euromepa S.A. v. R. Esmerian, Inc., 51 F.3d 1095, 1100 (2d Cir.

1995) ("[A] district court's inquiry into the discoverability of requested materials should

consider only authoritative proof that a foreign tribunal would reject evidence obtained with the

aid of section 1782."). Accordingly, "when the district court has no evidence suggesting opposition from the foreign tribunal," as is the case here, "the second <u>Intel</u> prong should count as 'neutral or slightly favor[ing]' the petitioner." <u>In re Application of Kreke Immobilien KG</u>, 2013 WL 5966916, at *5 (S.D.N.Y. Nov. 8, 2013); <u>cf.</u> <u>Schmitz</u>, 376 F.3d at 81-82, 84 (second factor weighed against granting discovery where German Ministry of Justice requested that the court deny the petition so as not to jeopardize an ongoing German criminal investigation). Bouka has provided a declaration from his counsel stating that "Malagasy courts do not oppose the introduction of evidence derived from international judicial assistance, but rather are required to consider all relevant and material evidence." Banks Decl. ¶ 20. This statement has not been contradicted by respondents. We thus find that the Malagasy criminal court would be receptive to whatever evidence applicants obtain from the instant application. <u>See</u> <u>In re Chevron Corp.</u>, 633 F.3d 153, 162 (3d Cir. 2011) (where respondent did not present "adequate evidence" to support factual contention regarding receptivity of foreign tribunal to discovery, first factor favored applicant because the respondent bears the "burden of demonstrating offense to the foreign jurisdiction.").

We also consider the character of the foreign proceeding and whether it is "unfair or incompatible with domestic notions of propriety." <u>Sealed 1</u>, 235 F.3d at 1206. Respondents' opposition to the application alleges that the Madagascar prosecution is a "sham" and that Bouka is using the Madagascar criminal action "to improve his leverage in unrelated civil proceedings," apparently referring to the arbitration between Bouka and Symbion. Opp. Mem. at 18-19. Respondents also argue that Bouka withdrew or otherwise lacked authority to initiate the criminal action. <u>Id.</u> at 13-14, 19.

This Court, however, cannot conclude from the fact that other gérants of SPARL have expressed disapproval of the prosecution — or even the fact that Bouka himself once considered withdrawing the complaint as a concession to settle other claims — that the character of the Madascar proceedings is such that they cannot be the subject of section 1782 discovery.  As to whether Bouka's actions should affect the progress of the proceeding, it is sufficient for our purposes that Hinks' efforts to obtain dismissal of the criminal indictment were unsuccessful.

With regard to respondents' arguments regarding alleged corruption in Madagascar's judiciary, see Opp. Supp. Ltr. at 2-3; Opp. Aug. 31 Ltr. at 1, respondents suggest that "Bouka bears the burden to demonstrate that Hinks will be guaranteed a fair trial that meets minimum due process standards," id. at 2.  Respondents provide no support for the proposition that this is a requirement of a section 1782 application; nor is the Court aware of any such authority.  Respondents argue that the United States Department of State has opined on the susceptibility of Malagasy courts to outside influences.  See id. at 2.  Respondents highlight that one publication assessed Madagascar with a bottom tier "Rule-of-law score."  See id. (citing Yanbai Andrea Wang, Exporting American Discovery, 87 U. Chi. L. Rev. 2089, 2164 (2020)).  However, section 1782 applications have been granted for use in proceedings taking place in other jurisdictions that appear in that same tier.  See, e.g., In re Tiberius Grp. AG, 2020 WL 1140784, at *9 (S.D.N.Y. Mar. 6, 2020) (Nigeria); Servicio Pan Americano, 354 F. Supp. 2d at 275 (Venezuela).  Ultimately, while respondents' arguments regarding potential corruption in Madagascar's courts gives the Court some pause, there is no particular evidence regarding corruption in this case and thus we do not find that these assertions justify denying the application.  See Republic of Ecuador, 2011 WL 736868, at *9 (acknowledging that there "may be some reason to question the legitimacy of the foreign proceedings, based on numerous

allegations of fraud, undue influence, and impropriety of the former judge," but ultimately concluding "that the allegations and evidence of bad faith here remain speculative and are an insufficient basis to deny the application outright.").

Hinks also argues that granting the application would undermine his Fifth Amendment rights.  See Opp. Supp. Ltr. at 3.  But section 1782 expressly provides that "[a] person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege."  See In re Gorsoan Ltd., 2020 WL 6891520, at *5 (S.D.N.Y. Nov. 23, 2020) (permitting section 1782 deponent to invoke Fifth Amendment privilege).  If there is a basis to assert privilege, that claim may be made in response to specific questions at a deposition.

Finally, respondents contend that Bouka hopes to use this discovery in litigation other than the Malagasy case.  See Opp. Mem. at 18-19; Opp. Supp. Ltr. at 4.  But this would not provide a reason to deny relief.  See In re Al-Attabi, 2022 WL 229784, at *9 (S.D.N.Y. Jan. 26, 2022) ("[P]rovided the statutory and discretionary criteria are satisfied, . . . a Section 1782 application should not be denied merely because the discovery material may have potential other uses by the petitioner."); Ahmad Hamad Algosaibi & Bros. Co. v. Standard Chartered Int'l (USA) Ltd., 785 F. Supp. 2d 434, 439 (S.D.N.Y. 2011) (finding that "the fact that [the applicant] may also be able to use the discovery in future litigation against the respondents is immaterial" to decision to grant application); cf. In re YS GM Marfin II LLC, 2022 WL 624291, at *10 (S.D.N.Y. Mar. 2, 2022) (third Intel factor favored applicants notwithstanding applicants' refusal to limit the use of the requested discovery).

In the absence of evidence to the contrary, we assume that the Madagascar court will be receptive to the evidence sought.  At the same time, we have some concerns regarding the

integrity of Madagascar's judicial system.  Thus, this factor weighs in favor of granting the application, though not heavily.

### c.  Whether the Application is an Attempt at Circumvention

This factor looks to "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." Intel, 542 U.S. at 265; accord Kiobel, 895 F.3d at 245 (where a section 1782 application was filed in an apparent attempt "to circumvent the Netherlands' more restrictive discovery practices," the third Intel factor weighed against granting the application); In re Escallón, 323 F. Supp. 3d 552, 560 (S.D.N.Y. 2018) (third factor counseled against granting application that was an "apparent attempt" to depose a witness who had already testified, in circumvention of Colombian law preventing second examinations).  "[T]o demonstrate circumvention, Respondents must illustrate not merely that the requested documents are not obtainable through [foreign] procedures, but that Applicants are engaged in a bad faith endeavor to misuse Section 1782." Hansainvest Hanseatische, 364 F. Supp. 3d at 251.  In In re Harbour Victoria, the court exercised its discretion to deny a section 1782 application, in part "[b]ecause it appears that Petitioner is seeking to evade an adverse discovery ruling in its ongoing U.S. proceeding."  2015 WL 4040420, at *9.  After a judge in a separate case identified "serious legal issues" with a discovery motion filed by the applicant, the applicant filed a section 1782 application "seeking effectively the same discovery that was just denied."  Id. at *7.  The court opined that granting the 1782 application would encourage circumvention of a court's discovery rulings, noting that "[i]f the judge overseeing [a] U.S. proceeding denies a given discovery request, the losing party could simply turn around and file a § 1782 petition for the same information, but repackaged as aiding the foreign proceeding."  Id.

Respondents originally argued that the application was an attempt at circumventing the stay of proceedings in Madagascar pending Hinks' appeal.  See Opp. Mem. at 18.  However, that appeal has been resolved against Hinks, and the matter was remanded for trial.  See Order of Court of Cassation.  Respondents raise no other argument that the discovery sought for the criminal proceedings is an attempt at circumvention.  Accordingly, this factor weighs in favor of granting the application.

### d.  Undue Burden

The fourth factor asks whether the section 1782 request is "unduly intrusive or burdensome."  Intel, 542 U.S. at 265.  The Second Circuit has held that "a district court evaluating a § 1782 discovery request should assess whether the discovery sought is overbroad or unduly burdensome by applying the familiar standards of Rule 26 of the Federal Rules of Civil Procedure."  Mees v. Buiter, 793 F.3d 291, 302 (2d Cir. 2015).  "[U]nduly intrusive or burdensome requests may be rejected or trimmed."  Intel, 542 U.S. at 265.  "Under Rule 45 of the Federal Rules of Civil Procedure, [w]hether a subpoena imposes an 'undue burden' depends on such factors as relevance, the need of the party for the documents, the breadth of the document, the time period covered by it, the particularity with which the documents are described and the burden imposed."  In re Application of Gorsoan Ltd. & Gazprombank OJSC for an Ord. Pursuant to 28 U.S.C. 1782 to Conduct Discovery for Use in a Foreign Proceeding, 2014 WL 7232262, at *10 (S.D.N.Y. Dec. 10, 2014) (punctuation omitted), aff'd, 652 F. App'x 7 (2d Cir. 2016).  "In general, it is far preferable for a district court to reconcile whatever misgivings it may have about the impact of its participation in the foreign litigation by issuing a closely tailored discovery order rather than by simply denying relief outright."  In re YS, 2022 WL 624291, at *11 (punctuation omitted).

Here, applicants seek document and deposition subpoenas to be directed to Hinks and five Symbion entities.  Applicants do not elaborate with specificity on the need for depositions of each Symbion entity.  Applicants appear to suggest that this breadth is necessary because Symbion engages in a "pattern of using the corporate form to avoid liabilities and defraud creditors."  See App. Mem. at 2.  Respondents maintain that three of the Symbion entities to which applicants seek to direct subpoenas — Symbion Power Services U.S., Inc., Symbion Power Holdings LLC, and Symbion Power Africa, LLC — "were not involved with the transactions in dispute."  Opp. Mem. at 1 n.1; see also Hinks Decl. ¶ 6.  Applicants have not provided any evidence that casts doubt on this representation.  Although we conclude that the first three Intel factors support granting the application to the extent that the proposed subpoenas relate to the Malagasy criminal action, we view six document subpoenas and six deposition subpoenas to be disproportionately burdensome given the limited showing that each Symbion subsidiary had actual involvement in the operation of the Mandroseza plant.  Instead, we will "trim[]" the subpoenas, Intel, 542 U.S. at 265, to provide that Bouka may hold a deposition of Hinks and Fed. R. Civ. P. 30(b)(6) depositions of Symbion Power LLC and Symbion Energy Holdings Ltd.  Bouka may also request documents relating to the events that gave rise to the Malagasy criminal prosecution from Hinks, Symbion Power LLC, and Symbion Energy Holdings Ltd.

Respondents argue that the requested discovery is unduly burdensome because Symbion has already provided Bouka with discovery as part of the ICDR arbitration.  See Opp. Mem. at 19-21.  Bouka responds that this should lessen the burden of discovery, as the documents have already been gathered and produced.  See App. Reply at 12.  Bouka concedes that "[r]espondents need only write a letter deeming the documents reproduced in this proceeding."  Id.  Thus,

respondents may satisfy their obligation to produce documents by indicating which documents produced to Bouka as part of the ICDR arbitration are responsive.

*   *   *

On balance, we find that the Intel factors favor granting the application with the above limitations on the scope of the discovery.

### 2. The Contemplated French Proceedings

#### a. Participation in the Foreign Proceedings

##### i. Symbion

At one point in his opening brief, Bouka asserts that "none of [the respondents] are participants in the contemplated proceeding against Groupe Filatex," see App. Mem. at 4, but later in the same brief states that he contemplates "bringing civil proceedings in France against Symbion, Groupe Filatex, Energiestro, and Okan Partners for the wrongful acquisition of an interest in the Plant . . .," id. at 17 (emphasis added). Bouka's French attorney also repeatedly refers to a contemplated suit against Symbion or its affiliates along with Groupe Filatex and the other entities. See Malan Decl. ¶¶ 14, 18. In the same vein, the respondents' opposition brief noted that that Symbion would be a party to the French proceeding if Bouka were to initiate the suit contemplated by his submissions and that he had not explained why discovery would not be available in the French proceeding itself. See Opp. Mem. at 21. But Bouka's reply brief simply does not address this point, instead suggesting that the respondents have the burden to prove what discovery is available in France and arguing a court should minimize "inquiry into foreign procedure." App. Reply at 11 (quoting Mees, 793 F.3d at 304).[7]

---

[7] Bouka's declaration asserts that "French courts do not generally have a document production procedure," Bouka Decl. ¶ 26, but there is no evidence that Bouka has any competence to opine on French law. While prior cases in this district have recognized that

Even apart from Bouka's own admission as to who will be the defendants in the suit it is contemplating, any suit in France would likely name as a defendant Symbion, one of the parties to the sale of the Mandroseza plant.  See App. Mem. at 3 ("Symbion has attempted to further prejudice VIO's interests by selling interests in the Plant to a third party, Groupe Filatex").

Case law holds that a section 1782 applicant should not be permitted to call upon the resources of the United States courts to obtain discovery for a proceeding where that very discovery is available in the foreign court.  See Intel, 542 U.S. at 264 ("A foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce the evidence."). As one case put it, where "evidence is available to the foreign tribunal," the authorization of discovery via section 1782 "is both unnecessary and improper."  In re Microsoft, 428 F. Supp. 2d at 194.  Here, there is sufficient likelihood that Bouka will sue Symbion as part of the contemplated French proceedings to counsel against ordering discovery here.  And while "[p]arent companies who are 'participants' to foreign proceedings are considered separate legal entities from their subsidiaries and affiliates for the purpose of Section 1782 motions," In re Top Matrix Holdings Ltd., 2020 WL 248716, at *5 (S.D.N.Y. Jan. 16, 2020), Bouka has not articulated any basis from which this Court could conclude that Symbion's subsidiaries possessed documents or information regarding the Groupe Filatex transaction that Symbion itself did not possess or would not have access to.

---

French discovery procedure may be more limited than that available under U.S. law, see In re Application of Auto-Guadeloupe Investissement S.A., 2012 WL 4841945, at *5-6 (S.D.N.Y. Oct. 10, 2012) (noting that "[a] cursory examination of France's Code of Civil Procedure reveals that a party seeking discovery is required to identify the precise document that it seeks produced" and thus, broad discovery "would be unavailable but for § 1782 assistance[.]"), Bouka has not identified any particular discovery requests that would be unavailable in French courts.

In the end, Bouka has failed to show that French courts will be unable to procure the
information sought once the contemplated action is filed.  The first <u>Intel</u> factor therefore counsels
heavily against granting the application insofar as it relates to discovery from Symbion, a party
to the contemplated French proceeding.

ii. <u>Hinks</u>

Bouka also seeks discovery from Hinks, Symbion's CEO.  While Symbion is likely to be
sued as part of the French proceeding because it was a party to the Groupe Filatex transaction,
nothing in Bouka's filings suggests that Hinks himself would be a party.  However, neither does
anything in Bouka's filings suggest that Hinks will be able to provide information that would not
be available from Symbion itself.  With regard to the French proceeding, Bouka asserts a need
for information regarding "agreements with Alpha and Groupe Filatex . . . and related documents
and communications."  App. Mem. at 11.  Bouka makes no suggestion that Hinks would have
access to documents or information regarding these agreements not known to Symbion, a party
to the agreements.  Notably, the proposed document subpoenas for Hinks and Symbion are
identical.  <u>See</u> Proposed Hinks Subpoena, Annexed as Exhibit 7 to App.; Proposed Symbion US
Subpoena, Annexed as Exhibit 8 to App.  We thus conclude that the discovery sought from
Hinks is likely to be available from Symbion itself.  Therefore, the first <u>Intel</u> factor weighs
against granting the application as it relates to Hinks for use in the French proceeding.  <u>See</u>
<u>Kiobel</u>, 895 F.3d at 245 ("[W]hen the real party from whom documents are sought . . . is
involved in foreign proceedings, the first <u>Intel</u> factor counsels against granting a 1782
petition . . . .") (citing <u>Schmitz</u>, 376 F.3d at 85 (2d Cir. 2004)).

26

b.  The Nature of the Foreign Proceedings

There is no indication that French courts would be averse to using discovery obtained through this Court's procedures, and so this factor weighs in favor of granting the application. See In re Application of Gorsoan Ltd., 2014 WL 7232262, at *7.

c.  Whether the Application is an Attempt at Circumvention

Respondents argue that Bouka has contrived the French action for the purpose of circumventing an arbitrator's ruling denying discovery of the agreements and depositions sought by this application.  See Opp. Mem. at 20; see also ICDR Procedural Order No. 8, dated Nov. 23, 2021, annexed as Ex. B to Hinks Decl. ("ICDR Order").  We accept that the ICDR arbitrator denied Bouka's request for discovery of parts of the settlement agreement between Symbion and Alpha.  See ICDR Order.  However, the only discovery respondents have shown Bouka was denied in the ICDR arbitration was for "information about the planned [corporate] structure after the intended implementation of the deal at the end of November," not the settlement agreement as a whole.  See ICDR Order ¶ 50.  And as Bouka points out, he could not have been denied discovery of documents relating to the Groupe Filatex acquisition of the Mandroseza plant, as the arbitrator's denial was dated November 23, 2021, see id., and the Groupe Filatex acquisition was first disclosed in February 2022, see Bouka Decl. ¶ 22.  Moreover, the arbitrator's denial of discovery of certain material from the Symbion-Alpha settlement agreement was "without prejudice to [Bouka's] ability to apply for further information regarding the settlement agreement once it has been finalized and appropriate circumstances exist."  ICDR Order ¶ 66.  The arbitrator's decision thus did not definitively deny discovery of the settlement agreement and did not extend to the other documents or depositions sought by the instant application.  See In re Pidwell, 2022 WL 192987, at *6 (S.D.N.Y. Jan. 21, 2022) (finding that section 1782 application

was not an attempt to circumvent foreign denial of discovery where "the Portuguese Court merely seems to have taken issue with the specificity of the requests").  Accordingly, this denial is neither final nor broad enough for the Court to conclude that the application should be regarded as an attempt at circumvention.

d.  <u>Whether the Request is Unduly Intrusive or Burdensome</u>

While we find that the request may be intrusive as to certain subsidiaries, we do not address this factor further as the other factors counsel against exercising our discretion to allow discovery in relation to the French proceeding.

* * *

Having considered all the <u>Intel</u> factors and related considerations, we find that they weigh against granting the application for discovery from Symbion and Hinks as applies to the contemplated French action, in light of the fact that Bouka will likely name Symbion as a defendant in any French proceeding.  We therefore exercise our discretion to relegate Bouka to the French courts for purposes of obtaining any needed information from Symbion.

With respect to the contemplated French proceedings, Bouka seeks discovery of agreements between Symbion, Groupe Filatex, and Alpha regarding the sale of the Mandroseza plant to Groupe Filatex.  <u>See</u> App. Mem. at 3.  Because we do not grant Bouka's application as relates to the French proceeding, any discovery from Symbion that relates exclusively to these agreements, or other evidence sought exclusively for the planned French action, should not appear in the revised document subpoenas that applicants have been directed to submit.  There should be no questioning at deposition on these agreements or on matters relating exclusively to the planned French action.

28

IV.  CONCLUSION

The application to take discovery (Docket # 1) is granted in part and denied in part.  The

Applicants may submit proposed revised subpoenas (disclosing the respondents' views on the

proposed wording) within 21 days of the date of this decision.

SO ORDERED.

Dated: October 28, 2022
       New York, New York


_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge

29